UNITED STATES of America, Plaintiff,

v.

**GENERAL INTERNATIONAL MARKET-ING GROUP, Craig M. Ellins, Kenneth M. Aronson, and George L. Aronson, Defendants.**

**Court No. 87–02–00166.**

United States Court of International Trade.

Aug. 10, 1990.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Jeanne E. Davidson, Atty., Washington, D.C., for plaintiff.

Sandler & Travis, P.A. (John N. Politis, Miami, Fla., of counsel), for defendant George Aronson.

Law Offices of Elon A. Pollack (Elon A. Pollack, Los Angeles, and Michael R. Doram, Beverly Hills, Cal., of counsel), for defendants Kenneth Aronson and Craig Ellins.

## MEMORANDUM OPINION AND ORDER

WATSON, Judge.

This is an action in which the government is seeking to enforce civil penalties

which it assessed against the defendants for alleged fraudulent violations of 19 U.S.C. § 1592 in connection with sixty-nine entries of wearing apparel. The individual defendants have moved to dismiss the complaint under Rule 4(h) of the Rules of this court because of the failure of the government to serve the complaint on them within 120 days of commencement of the action. The defendants have also moved to dismiss the action on the ground that it is time-barred and because it allegedly fails to describe the fraud with the particularity required. Alternatively, the defendants move for a more definite statement of the alleged fraud and for the striking from the complaint of matters said to be scandalous and immaterial.

For the purposes of the motion to dismiss, the allegations of the complaint are taken to be true. Defendant General International Marketing Group ("GIMG") is a California corporation. Defendants Ellins and Kenneth Aronson were co-owners of GIMG. Defendant George L. Aronson was the general manager of GIMG. The complaint alleges a fraudulent scheme by the defendants pursuant to which they filed sixty-nine consumption entries at the Port of Los Angeles, California for wearing apparel bearing counterfeit "Ralph Lauren" trademarks, using invoices which did not reflect the true contract prices of the merchandise but instead showed a false, lower price. According to the government, the false entered value of the merchandise was $1,023,634, the actual value of the merchandise was $1,432,128, the domestic value of the merchandise was $3,598,000, and the loss of revenue to the United States was $131,181.00.

Following criminal proceedings, the outcome of which is not relevant to the resolution of these motions, the government sought civil penalties from the defendants, and brought this action to collect those civil penalties under 19 U.S.C. § 1592.

▮ It is not disputed that the complaints in this action were served on the individual defendants more than 120 days after the action was commenced in court. Rule 4(h) of the Rules of this court provides that an action may be dismissed if service of the summons and complaint is not made upon a defendant within 120 days after the action is commenced and the plaintiff "cannot show good cause why such service was not made within that period...." The court must therefore decide whether or not the government has shown good cause for not accomplishing service on the defendants within the prescribed time period. For the purposes of its analysis, the court focuses on the efforts made by the government to serve the complaints prior to June 10, 1987, which was the last day of the 120 day period.

In the cases of George Aronson and Kenneth Aronson, there was no attempt to accomplish personal service until after June 10, 1987. During the 120 day period leading up to that deadline, with respect to George Aronson, the efforts consisted of mailing copies of the original summons and complaint to him (at what was believed to be his address) and to his attorney, both on the date of filing (February 10, 1987); mailing copies of an amended complaint to George Aronson at the same address approximately 40 days later, and, when these mailings failed to accomplish service, forwarding copies of the summons and complaint on May 22, 1987 to the Western Regional Office of the Customs Service with instructions to locate and serve him by hand. Beyond this, the only activity prior to the deadline of June 10, 1987, if it can be so described, is recounted in the affidavit of Special Agent Moore [Attachment B to Plaintiff's Memorandum in Opposition to Defendant Kenneth M. Aronson's Motion to Dismiss] in which Agent Moore states that he received the summons and complaint on May 29, 1987, immediately located George Aronson's address, informed his supervisor of that fact on June 1, 1987, and was instructed to discontinue efforts to make personal service while the Department of Justice sought to have counsel for defendants accept service. There is no proof whatsoever that the failure to serve this complaint during the 120 day period was due to any dilatory, evasive or obstructive tactics by George Aronson or his counsel.

In the case of Kenneth Aronson, the facts are virtually identical except that after the summons and complaint were forwarded to the Western Regional Office of the Customs Service, Agent Moore states that on May 30 and May 31, 1987 he attempted unsuccessfully to locate the residential address of Kenneth Aronson. On June 1, 1987 he discontinued his efforts pursuant to the same instructions from his supervisor as were issued in the case of George Aronson.

In the case of Craig Ellins, copies of the summons and complaint were sent to him by certified mail on the date of filing, i.e. February 10, 1987, at 1902 Comstock Avenue, Los Angeles, California, an address which was provided to the government attorney by the Customs Service and which the government represents to be "the only home address used by Mr. Ellins during the administrative proceedings that preceded this litigation." [Declaration of Jeanne E. Davidson, Attachment to Plaintiff's Memorandum in Opposition to Defendant Craig M. Ellins' Motion to Dismiss.] Defendant Ellins points out that the pre-penalty notification sent to defendant was sent to his correct address at 5933 Foothill Drive in Los Angeles. On the date of filing, the government also sent copies of the summons and complaint to the attorney who had represented him in the administrative proceeding and who ultimately represented him in this litigation.

The complaint sent to Mr. Ellins at the Comstock Avenue address was returned to the government on March 4, 1987. On March 17, 1987, the government filed an amended complaint and sent copies to the aforementioned attorney. On March 19, 1987, the Customs Service provided government counsel with two additional address for Mr. Ellins which the government claims "were obtained from official records of other governmental entities" with "considerable difficulty." One of those addresses was the Foothill Drive address to which the pre-penalty notice had been sent. Copies of the amended complaint were also sent to Mr. Ellins' attorney. None of the aforementioned mailings accomplished service.

On May 22, 1987, when, according to the government's attorney, "it became apparent that other means would be necessary to demonstrate service of process" copies of the summons and complaint were sent to the Western Regional Counsel's Office of the Customs Service with a request to have Customs agents personally serve Mr. Ellins. Special Agent Dennis T. Shintani states, in an affidavit attached to plaintiff's response to Defendant Ellins' Motion to Dismiss, that on or about May 28, 1987 he received the summons and complaint intended for service on defendant Ellins. On Saturday, May 30, 1987, he made two attempts to serve Ellins at the Foothill Drive address, one at 12 noon and the second one hour later. On both occasions, he received no response from within the residence. On the second occasion, he left his business card in the upper door jamb with a message for the defendant Ellins to call him at his office as soon as possible. That concluded the efforts made to serve defendant Ellins prior to June 10, 1987.

To decide this motion, the court must address the question of what constitutes "good cause" for not accomplishing service within 120 days after commencing the action. The term "good cause" is one of those phrases which has never been precisely defined and perhaps is inevitably destined to remain somewhat unclear. Our Rule 4(h) follows Rule 4(j) of the Federal Rules of Civil Procedure (FRCP). The only example given in the legislative history of the FRCP is the situation of a defendant who seeks to evade service. 128 Cong.Rec. H9849, H9852 n. 25 (Dec. 15, 1982). That example is too obvious to be of use in more subtle cases in which the operative factors are not a product of the putative defendants' active obstruction, but rather, are centered on the action or inaction of the party seeking to make service. It is also rather easy to find good cause in those cases in which efforts to serve a defendant are notably diligent, such as those in which repeated attempts at personal service are coupled with an application to the court for an enlargement of time to effect service. *See, United States v. Nuttall,* 122 F.R.D. 163, 167 (D.Del.1988). On the other hand,

when the efforts made to serve a complaint during the 120 day period have a somewhat minimal character, it becomes increasingly difficult to locate clear standards of good cause.

In the opinion of this court, the clearest statement of a guiding standard in this area is found in *U.S. v. Fields,* 703 F.Supp. 749, 751 (N.D.Ill.1989). In that action, the government sued the defendant for failure to pay employee withholding taxes but failed to serve the complaint on defendant until after the 120 day period had expired. In essence, the efforts made during the 120 days were nothing more than checking an administrative file and asking telephone directory assistance for defendant's current address, followed by service on the wrong defendant, and fruitless inquiries among several co-workers of the defendant from the time of the alleged tax violation. The court held that "good cause" means "reasonable efforts" and that "reasonable efforts" means those efforts reasonably calculated to effect service within 120 days. In short, a fair standard of good cause is one which requires people to show behavior consistent with recognition that a 120 day deadline exists. It is worth noting that the word "deadline" originated in prisons to describe a line or boundary, the crossing of which subjected prisoners to the penalty of death. It would seem reasonable therefore to require plaintiffs to make such efforts at service as are consistent with a recognition that 120 days may otherwise mark the death of the action. *See, Siegel, Practice Commentary on Amendment of Federal Rule 4 (Eff. Feb. 26, 1983) with Special Statute of Limitation Precautions,* 96 FRD 88, 103, 109 (1983).

Service attempts which are limited to mailing are clearly not reasonably calculated to effect service within 120 days. The courts have recognized that Congress was concerned with problems that might arise in providing notice to defendants through a system of mail service. *See Green v. Humphrey Elevator and Truck Co.,* 816 F.2d 877, 880 (3rd Cir.1987). That is why, although Rule 4 allows service to be made by mail, it also requires the mailing of two copies of a notice and acknowledgement

and a return envelope, postage pre-paid, addressed to the sender, which, under FRCP Rule 4(g) or Rule 4(e) of our Rules must be filed with the court after it is received by the sender. Courts have reasoned that because service by mail is subject to abuse the requirements of this mailing rule must be adhered to exactly. *Norlock v. City of Garland,* 768 F.2d 654, 655, 657 (5th Cir.1985). Courts have also cautioned that if the mail method is to be used, it should be used promptly and this is the reason FRCP 4(c)(2)(C)(ii) and Rule 4(c)(1)(C)(ii) of the Rules of this court provide that if no acknowledgement of service is received by the sender within 20 days after mailing, then service shall be made under the provisions for personal service. It is therefore clear that relying on service by mail cannot ordinarily be considered a reasonable attempt to accomplish service within 120 days and cannot be viewed as a recognition of the existence of a real deadline.

When twenty days have passed after mailing without the return of the acknowledgement that the mail was received, the diligent plaintiff should recognize that other means of service will have to be used within the approximately 100 days which remain. *Green v. Humphrey Elevator and Truck Co.,* 816 F.2d at 883.

The preceding analysis clearly indicates that there was no good cause for failure to serve the Aronsons during the 120 days following the commencement of the action against them.

The only remaining question is whether the process-serving effort of Special Agent Shintani, consisting of two attempts at personal service on defendant Ellins within the space of two hours and the deposit of his card in the door of Ellins' house was sufficient to meet the standard being discussed here. Even if we were to overlook the long period of time which lapsed between the failure of mail service and the day when personal service was first attempted, the lack of any further attempt in the eleven days remaining indicates the lack of a reasonable attempt to accomplish service within the deadline. *Braxton v. United States,*

817 F.2d 238, 242 (3rd Cir.1987). To consider this a showing of good cause, the court would, in effect, be establishing a double standard, i.e., a looser standard for those entities which must accomplish service by means of coordination between distant and relatively unconnected branches, such as the government and large corporations, and a stricter standard for those on whom the burden of making service is more directly visible, such as a single practitioner and a process server. Such a development would be inconsistent with the rule and at odds with fundamental considerations of fairness.

In concluding, the court notes a number of factors which did not, and should not, have any effect on its decision. In this category is the fact that the government filed an amended complaint in this action; that it ultimately succeeded in making personal service after the 120 day deadline; that it mailed copies of the various complaints to the putative attorney for the defendants, and that this dismissal will effectively be with prejudice because it comes after the expiration of the limitations period.

■■■■ Ultimate success in serving the complaint cannot cure a failure to show good cause for failing to make service within the 120 days following the commencement of the action. The filing of an amended complaint does not affect the obligation to serve the parties named in the original complaint; otherwise amendment of the complaint would be a simple method of nullifying Rule 4(h). *Wei v. State of*

*Hawaii,* 763 F.2d 370, 372 (9th Cir.1985). Absent proof that an attorney was expressly authorized to accept service of process, service on an attorney does not satisfy the Rule. *Gibbs v. Hawaiian Eugenia Corp.,* 581 F.Supp. 1269, 1271 (S.D.N.Y.1984); *Michelson v. Merrill Lynch Pierce, Fenner & Smith, Inc.,* 619 F.Supp. 727 (S.D.N.Y. 1985). Finally, the fact that the government cannot renew this action is not an argument against dismissal. In this case that consequence arises primarily from the fact that the government did not commence the action until the very end of the limitation period. In any event, in providing for dismissal under this rule Congress explicitly recognized the possibility that dismissals coming after the expiration of a statute of limitation could bar plaintiffs from bringing the action again. *United States for Use and Benefit of DeLoss v. Kenner General,* 764 F.2d 707, 711 n. 5 (9th Cir.1985).

In view of the fact that the court finds dismissal of this action proper for failure to serve the complaint within 120 days of commencement of the action, it does not reach the other grounds offered in support of dismissal. For the reasons given above, it is hereby ORDERED that the motions to dismiss by the individual defendants be, and the same hereby, are granted.