The General State Authority, Commonwealth of Pennsylvania, Plaintiff *v.* Coleman Cable & Wire Company, Cokain Electrical Service, Fidelity & Deposit Co. of Maryland, and McCormick, Taylor and Associates, Defendants. Bellante, Clauss, Miller & Nolan and Warehouse Electrical Supply, Inc., Additional Defendants.

Argued September 13, 1976, before Judges CRUMLISH, JR., WILKINSON, JR. and ROGERS, sitting as a panel of three.

*Jack M. Stover,* with him *R. J. Woodside,* and *Shearer, Mette & Woodside,* for Cokain Electrical Service, Inc.

*John M. Phelan,* with him *Morgan, Lewis & Bockius,* for Fidelity & Deposit Company of Maryland.

*C. Grainger Bowman,* with him *McNees, Wallace & Nurick; Nevin Stetler;* and *Stetler & Gribbin,* for additional defendants.

OPINION BY JUDGE CRUMLISH, JR., October 29, 1976:

The instant action in assumpsit was commenced by the General State Authority, Commonwealth of Pennsylvania (GSA), against four named defendants: Coleman Cable & Wire Company (Coleman); Cokain Electrical Service, Inc. (Cokain); Fidelity and Deposit Co. of Maryland (Fidelity); and McCormick, Taylor & Associates, Inc. (Taylor), and stems from the installation into Polk State Hospital of allegedly defective cable. The cable had been manufactured by Coleman, wholesaled by Warehouse Electrical Supply,

Inc. (Warehouse) to Cokain, who installed same in the hospital pursuant to GSA's contract.

After the filing of preliminary objections to the original complaint, GSA filed an amended complaint against the same named defendants. The amended complaint is the document upon which Plaintiff's cause of action is presently based.

Defendants Cokain and Fidelity, its surety, joined Warehouse as an additional defendant by third party complaints.[1] Warehouse, in turn, filed preliminary objections in the nature of a demurrer, and in the nature of a motion for a more specific complaint to the third party complaints filed by Cokain and Fidelity, and the disposition of these preliminary objections is currently before this Court.

Plaintiff's amended complaint alleges, *inter alia*, that certain electrical cable (5 KV cable) used and installed in the electrical distribution system as required by contract specifications, failed because it was defective. Cokain, without acknowledging the truth of the allegations contained in Plaintiff's amended complaint, in turn filed a third party complaint against Warehouse, alleging that if the 5 KV cable was defective, liability rests with the party who furnished the cable to Cokain, *i.e.*, Warehouse. Fidelity, as Cokain's surety, filed a third party complaint against Warehouse making substantially identical allegations.

The third party complaints filed by Cokain and Fidelity, against Warehouse, are substantially identical both in allegation and in substance. Therefore,

---

[1] Bellante, Clauss, Miller & Nolan (Bellante) were also joined as an additional defendant in this action by Taylor upon allegation that Bellante had contracted with Taylor to do certain electrical work. Fidelity filed a complaint against Bellante averring that if Fidelity were held liable as surety, Taylor, of necessity, would in turn be liable.

Warehouse's legal position against Cokain's complaint is identical to its legal position against Fidelity's complaint.[2]

## Warehouse Electrical Supply, Inc. Preliminary Objections

### 1. *Demurrer*

Initially, Warehouse argues that Cokain has failed to state a cognizable cause of action in assumpsit against it because Warehouse, as wholesaler of the cable, sold and delivered 5 KV cable *meeting the specifications established in the contract between GSA and Cokain,* and having discharged that duty, could not possibly be in breach of contract. It is argued that the contract specifications between GSA and Cokain, and the duties expressed and implied therein, govern the responsibilities of Warehouse as supplier of the cable. It is not disputed that Warehouse was aware of these specifications before providing the cable.

Warehouse also argues that the existence of detailed specifications which govern the duties as between wholesaler and purchaser, coupled with Warehouse's status as wholesaler, prevent Cokain from asserting liability against Warehouse based on warranties of fitness, merchantability or sample.

For the following reasons, we must dismiss the instant demurrer.

A cause of action *ex contractu* must be established by pleading the existence of a contract (including its essential terms), a breach of duty imposed by the con-

---

[2] The preliminary objections of Warehouse against Cokain being the same as against its surety, Fidelity, we shall refer to Cokain as respondent to these objections. However, our reference to Cokain in this opinion includes Cokain's third party complaint as well as the third party complaint of its surety, Fidelity.

tract and resultant damages. Here, the duty imposed upon Warehouse in its agreement with Cokain was to provide 5 KV cable which would meet the specifications of Cokain's contract with GSA. Such cable was sold and delivered to Cokain. For purposes of this demurrer, we must assume the truth of the allegation as to specifications,[3] but even assuming such validity, we cannot hold that a cognizable cause of action in assumpsit has not been asserted, for the complaint rests not only upon allegations to specification but also is bottomed upon the existence of warranties between the parties.

---

[3] The exact specifications for the cable are as follows:

"(a) Section E-2, paragraph 3.1, page #2-8, which provides that:

" '3.1 All primary cable shall consist of single concentric stranded uncoated copper conductors, each cable insulated with ethylene-propylene type rubber, shielded and jacketed with polyvinyl-chloride for use in conduit, underground duct, riser conduit, aerial or direct burial installations and shall be in accordance with IPCEA S-19-81. The minimum insulation shall be 0.090 inches for five KV in thickness, and shall be for an "Underground System".'

"(b) Section E-2, paragraph 315, page 32-10, provides that:

" '3.5. Each reel of cable shall be *factory tested* with field-rated voltage and C.D. tested at a complete short-time A.C. test made in accordance with IPCEA and ASTM procedures. For each length of cable supplied, a *certified* and *notarized test report*, real number for identification, *date of manufacture* and *date* of *test* shall be submitted. Nine (9) copies of the certified and notarized report shall be submitted to the Authority and the Architect.' (Emphasis supplied.)"

It is not disputed that the cable tendered met the above specifications, but Warehouse further asserts that since the specifications for cable include a condition that the cable be *factory tested and accompanied by a certified and notarized test report*, and that since no duty to test was visited upon it, the delivery of cable did in fact meet all specifications. We agree that Warehouse has met all specifications called for by contract, and note its duties did not include a duty to test; however, this fact in and of itself does not extinguish the possibility of a breach of other conditions of its contract, *i.e.*, warranties, either express or implied.

## 2. *Warranties*

Cokain has alleged the existence of certain *affirmations* and *promises* made by Warehouse with respect to testing and certification of the cable, as well as adherence to the GSA-Cokain contractual specifications. Further, Cokain's pleading avers facts supportive of warranties of fitness and merchantability as well as that of sample. *See* Sections 2-313, 2-314, 2-315 of the Uniform Commercial Code, Act of April 6, 1953, P.L. 3, *as amended,* 12A P.S. §§2-313, 2-314, 2-315.

One of the theories upon which GSA's complaint rests and upon which Cokain's third party complaint rests is the existence of express and implied warranties. But the question as posed by preliminary objections is at present premature, for the existence or non-existence of such warranties is a matter for proof at trial and not the proper subject of preliminary objection.

The demurrer states in essence that even if all facts pleaded by Cokain are true, such facts would not support a cause of action in assumpsit. Warehouse apparently challenges the *existence* of warranties of fitness, merchantability and sample as not being present in the contract with Cokain, and as evidence of this, points us to *facts* both of record, and *dehors* the present record, supportive of its position that warranties were neither express nor implied.

In deciding the preliminary objections before us, for purposes of the demurrer, we must accept as true all well pleaded facts by Cokain, and in doing so, we can hold no other but that the facts as pleaded are supportive of an action in assumpsit based on express and implied warranty principles.

If Warehouse is able to prove at trial that the facts as pleaded by Cokain relating to the existence of war-

ranties are in error, Cokain's cause of action will, of necessity, fall. However, trial, not preliminary objection, will accomplish this purpose.

By instituting objections, Warehouse has resigned itself to the posture of accepting as true the well pleaded averments in the third party complaint against it and, as such, must await trial to disprove them for, as pleaded, actions in warranty do exist.

And finally, we must deny Warehouse's motion for a more specific pleading. No attempt is made to brief, explain or support a prayer for a more specific pleading. No reference is made to a rule of civil procedure supportive of such a request and our review of the third party complaint shows specificity sufficient to allow a full and meaningful answer to be filed by Warehouse.

Consistent with the foregoing, we

ORDER

AND Now, this 29th day of October, 1976, the preliminary objections in the nature of demurrers and motions to strike the third party complaints of Cokain Electrical Service, Inc. and Fidelity & Deposit Co. of Maryland against Warehouse Electrical Supply, Inc., are hereby denied.