Janet M. SMITHGALL,

v.

**TRUSTEES OF the UNIVERSITY OF PENNSYLVANIA and Hospital of the University of Pennsylvania.**

Civ. A. No. 92–4502.

United States District Court,
E.D. Pennsylvania.

May 26, 1994.

Glennis L. Clark, Allentown, PA, Geoffrey R. Johnson, Sprague, Higgins, Creamer & Sprague, Philadelphia, PA, for plaintiff.

Hope A. Comisky, Anderson, Kill, Olick & Oshinsky, P.C., Philadelphia, PA, for defendants.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

This civil action, which was tried before a jury in this court between December 13 and December 17, 1993, resulted in the entry of a verdict in favor of the plaintiff, Janet Smithgall against the defendant Trustees of the University of Pennsylvania in the amount of $70,000 on plaintiff's breach of contract claim only. From this verdict, defendants have

filed post-trial motions to alter or amend the judgment and/or for a new trial pursuant to Fed.R.Civ.P. Nos. 50 and 59.

## I. *HISTORY OF THE CASE.*

Janet Smithgall filed the instant suit on July 31, 1992 alleging that the defendants had violated the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621(a)(1), *et. seq.,* the Pennsylvania Human Relations Act ("PHRA"), 43 Pa.S.A. § 955(a) and (d), and the terms of a settlement agreement dated January 10, 1990 which was entered into in resolution of a previously-filed complaint of age discrimination with the Pennsylvania Human Relations Commission ("PHRC") and the Equal Employment Opportunity Commission ("EEOC"). Specifically, plaintiff alleged that, among other things, defendants discriminated and retaliated against her by "unilaterally and arbitrarily" changing her job as a research dietician so as to exclude all professional duties and to reduce her position to that of a clerk; by segregating her physically from the other personnel in the unit to which she had been assigned to work; by assigning her to work areas which were unsecure, unsafe and degrading; by excluding her from personnel rosters and notices regarding activities, schedules and other information necessary to the performance of her job; and by not informing her of other available positions within the University and University Hospital thereby precluding her from applying and being considered for such positions.[1]

At the time that the plaintiff filed her complaint, she was 61 years of age and had worked as a research dietician for the Harrison Department of Surgical Research and the Trustees of the University of Pennsylvania since November, 1988. Prior to that, Mrs. Smithgall had been employed in a variety of clinical and managerial positions in the field of dietetics/food services at several state and private, non-profit hospitals throughout the greater Philadelphia metropolitan area from 1952–1957 and from 1976–1988, including the Hospital of the University of Pennsylvania. Mrs. Smithgall had earned a Bachelor of Science degree in Institutional Administration and Nutrition from the Pennsylvania State University in 1952 and a Master's degree in Nutrition from Drexel University in 1977.

## II. *DISCUSSION.*

### A. *Jurisdiction of this Court to Consider Plaintiff's Breach of Contract Claim.*

Defendants first renew their challenge to this court's jurisdiction to hear and consider the plaintiff's claim that the defendant Trustees breached the settlement agreement which they entered into with her on January 10, 1990. In this regard, it appears to be defendants' contention that because the PHRC refused to re-open the plaintiff's original complaint for purposes of ascertaining whether or not the settlement agreement had been breached, the only remedy available to plaintiff to obtain relief from that decision was to appeal that decision to the state Commonwealth Court and hence this court had no jurisdiction over this aspect of the case. We disagree.

It is of course, axiomatic under 28 U.S.C. § 1367(a) that:

"Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they

---

1. In June, 1989, the plaintiff was terminated from her employment with the University Hospital as a research dietician. In response, she filed a complaint alleging age discrimination with the PHRC and that complaint was cross-filed with the EEOC. In settlement of that complaint, the parties entered into an agreement on or about January 10, 1990 whereby the trustees agreed to employ Mrs. Smithgall in a temporary research dietician position beginning February 1 and ending November 30, 1990 under the supervision of Dr. James L. Mullen. The trustees further agreed that they would "bridge" the plaintiff's benefits in the temporary position as if there had been no interruption in her employment, and that they would automatically consider her a candidate for the next two open Nutritional Support Service Research Dietician positions upon her application therefor. It is this agreement which plaintiff contends was breached and upon which the instant lawsuit is in large part premised.

form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."

 It has repeatedly been recognized that the exercise of supplemental jurisdiction is proper where the federal and state claims are so related that they derive from a common nucleus of operative facts and are such that the plaintiff would ordinarily be expected to try them in one judicial proceeding, taking into consideration the accepted principles of judicial economy, convenience and fairness to the litigants. *Glaziers & Glassworkers Union Local 252 Annuity Fund v. Newbridge Securities,* 823 F.Supp. 1191, 1197 (E.D.Pa.1993). That these principles apply with equal force to discrimination and civil rights actions is likewise well-established. *See: Roy v. Russell County Ambulance Service,* 809 F.Supp. 517, 519 (W.D.Ky.1992); *Godfrey v. Perkin–Elmer Corp.,* 794 F.Supp. 1179, 1183–1184 (D.N.H.1992).

 In this case, of course, this court has subject matter jurisdiction pursuant to the Age Discrimination in Employment Act. Hence, inasmuch as the plaintiff's federal claims and state law breach of contract claim arise out of a common nucleus of operative fact, the exercise of supplemental jurisdiction is, at first blush, proper. These facts notwithstanding, in support of their argument that no jurisdiction exists over the plaintiff's breach of contract claim, the defendant Trustees rely almost exclusively upon the Commonwealth Court's decision in *Mechensky v. Commonwealth, Pennsylvania Human Relations Commission,* 134 Pa.Cmwlth. 192, 578 A.2d 589 (1990). In that case, the Commonwealth Court upheld the conclusion of the Pennsylvania Human Relations Commission that it had the implied authority, under Sections 7(d) and 9(c) of the state Human Relations Act, 43 P.S. §§ 957(d) and 959(c), to consider whether an agreement entered into in settlement of certain charges brought under the Act had been breached. In so holding, the Commonwealth Court stated:

"The Commission's argument [that its authority to consider a charge of breach of contract may be implied from provisions of the act favoring settlement together with the express powers delegated to the Commission] is persuasive. Section 42.73 of the Special Rules of Administrative Practice and Procedure for the Human Relations Commission, 16 Pa.Code § 42.73, allows a complainant the right to petition the Commission to determine whether a respondent has complied with the terms of a settlement agreement and further specifies that the Commission shall then take whatever action it deems necessary as justice requires. This authority shall not be contravened unless so clearly at odds with fundamental principles of law as to constitute whim or fancy ... (citations omitted) Accordingly, this Court does not find Section 42.73 to be an improper extension of the Act."

Nowhere in that decision, however, does the Commonwealth Court state that either its or the PHRC's authority to consider the issue of breach is exclusive. Thus, while we do not disagree with the defendants that the PHRC and the Commonwealth Court had the authority to consider reopening the plaintiff's original complaint, we cannot agree that that authority automatically operated to divest this Court of our supplemental jurisdiction upon the Commission's refusal to do so. Rather, we believe that this issue is appropriately analyzed under the theories of claim and issue preclusion outlined in *Astoria Federal Savings and Loan Association v. Solimino,* 501 U.S. 104, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991) and *McNasby v. Crown Cork and Seal Co., Inc.,* 888 F.2d 270 (3rd Cir.1989) and the cases which follow them.

 Indeed, the doctrines of claim preclusion (otherwise known as res judicata) and issue preclusion (or collateral estoppel) are two separate and distinct concepts. Issue preclusion bars relitigation of an issue identical to that in a prior action. *Edmundson v. Borough of Kennett Square,* 4 F.3d 186, 189 (3rd Cir.1993). Claim preclusion, on the other hand, is broader in effect and prohibits reexamination not only of matters actually decided in the prior case but also those that

the parties might have, but did not assert in that action. *Id.* The two concepts become relevant when, as is the situation here, the question of whether a plaintiff should be precluded from raising claims in a federal forum which she could have raised in a prior state proceeding arises. *See, e.g.: Bradley v. Pittsburgh Board of Education,* 913 F.2d 1064, 1070 (3rd Cir.1990).

This issue was addressed in the context of the Pennsylvania Human Relations Act by the Third Circuit Court of Appeals in *McNasby v. Crown Cork and Seal Co., Inc.,* 888 F.2d 270 (3rd Cir.1989). In that case, the plaintiff, Elizabeth McNasby, filed PHRC/EEOC complaints against the defendant Crown Cork and Seal Co. and the Sheet Metal Production Workers' Union alleging that the defendants had engaged in an ongoing pattern and system of sexual discrimination in hiring and job classifications. Approximately one year prior to McNasby's individual filing, she had been one of eleven complainants who filed a similar complaint with the PHRC alone. Some ten years later, the PHRC issued its opinion finding that Crown Cork and the Union had discriminated against Crown Cork's female employees on the basis of their sex and awarded broad injunctive, but only limited monetary relief to the complainants. The plaintiffs thereupon moved for reconsideration before the PHRC, which was denied and thereafter appealed the decision to the Pennsylvania Commonwealth and Supreme Courts which likewise upheld the PHRC's ruling. The U.S. Supreme Court declined to hear the case on the ground that it did not present a substantial federal question. In the interim, however, Ms. McNasby received a right to sue letter from the EEOC and proceeded to file an action in the U.S. District Court for the Eastern District of Pennsylvania pursuant to Title VII. The district court eventually granted summary judgment in favor of the defendants in the federal court action because, it reasoned, the causes of action in state and federal court were identical for claim preclusion purposes in that they were based on the same set of facts and the plaintiff had not shown the existence of any exceptions to the PHRC preclusion statute, 43 Pa.C.S.A. § 962(b) which prohibits subsequent actions based on the same grievance as a PHRA action.

The Third Circuit, in reversing the district court, concluded that the plaintiff's action was not precluded by either the state common or statutory law because neither the PHRC nor the Commonwealth Court had original jurisdiction to hear McNasby's Title VII claim nor did § 962(b) of the PHRA operate to bar anything other than the relitigation under other state and municipal laws of a grievance brought before the PHRC. In so holding, the Court went on to note that in order for a second action to be precluded under Pennsylvania law there must be an identity of four things: (1) the thing sued upon, (2) the cause of action, (3) the persons and parties to the action and, (4) the quality or capacity of the parties suing or sued. *Id.* at 276 citing *Gregory v. Chehi,* 843 F.2d 111, 116 (3rd Cir.1988) and *Duquesne Slag Products Co. v. Lench,* 490 Pa. 102, 105, 415 A.2d 53, 56 (1980).

A similar result was reached by the U.S. Supreme Court with respect to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et. seq.* in *Astoria Federal Savings and Loan Ass'n v. Solimino,* 501 U.S. 104, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991). In that case, the plaintiff, a 63–year–old former bank vice president filed a charge of age discrimination with the EEOC which, in turn referred the matter to the New York State Division of Human Rights in accordance with a work sharing arrangement between the two agencies. Following hearings and a finding by that state agency that no probable cause existed to believe that Mr. Solimino had been terminated from his position because of his age, the respondent appealed to the state Human Rights Appeal Board, which affirmed the agency's conclusion. In lieu of seeking further review of the board's decision in state court, the plaintiff filed an ADEA suit in U.S. District Court for the Eastern District of New York grounded on the same factual allegations considered in the state administrative proceedings. The district court granted the defendant's motion for summary judgment holding that the common law presumption of administrative estoppel prevailed by virtue of Congress' fail-

ure in either the language or legislative history of the ADEA to specifically address the issue. The Court of Appeals for the Second Circuit, however, inferred from the Act's structure the opposite result—a legislative intent to deny preclusive effect to such state administrative proceedings, and reversed. In affirming the Second Circuit and holding once and for all that the determinations of such state agencies were entitled to no preclusive effect, the U.S. Supreme Court reasoned:

" ... the Age Act ... carries an implication that the federal courts should recognize no preclusion by state administrative findings with respect to age-discrimination claims. While the statute contains no express delimitation of the respect owed to state agency findings, its filing requirements make clear that collateral estoppel is not to apply. Section 14(b) requires that where a State has its own age-discrimination law, a federal Age Act complainant must first pursue his claim with the responsible state authorities before filing in federal court. 29 U.S.C. § 633(b); *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979). It further provides that "no suit may be brought under [the Age Act] before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated." The deadline for filing with the EEOC likewise refers to the termination of prior state administrative action, § 7(d)(2) providing that where § 14(b) applies such a charge shall be filed ... within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier." 29 U.S.C. § 626(d)(2). Both provisions plainly assume the possibility of federal consideration after state agencies have finished theirs.

501 U.S. at 110, 111 S.Ct. at 2171.

▪ Applying all of the preceding principles to the matter now before us, we are compelled to initially conclude that the coalition of the four elements needed to establish claim preclusion under Pennsylvania law are not present here. Indeed, the gravamen of Mrs. Smithgall's original complaint before the PHRC involved the question of whether or not the defendants terminated her from her position on the basis of her age whereas the common law question put before this court was whether or not the agreement reached in settlement of that complaint was breached. While we acknowledge that the plaintiff apparently first endeavored to have this issue resolved by the PHRC by asking that her original complaint be revisited, we simply cannot find that that agency's refusal to reopen the plaintiff's original file constituted a final disposition of the claim for breach on the merits or that her failure to appeal that decision to the Commonwealth Court in any way "turned the statutory framework on end," as the defendants assert. Again, nowhere in the *Mechensky* decision or in 42 Pa.C.S.A. § 763 do we find support for the proposition that the authority of the PHRC or the Commonwealth Court to consider breaches of such settlement agreements is exclusive. What's more, in light of the Supreme Court's holding in *Astoria* that the final decisions of state agencies and state courts on appeal from such agency rulings do not operate to preclude the filing of federal Age Act cases, we can find no basis upon which this court's exercise of its supplemental jurisdiction over the breach of contract claim should have been usurped. For all of these reasons, defendants' motion for post-trial relief on the basis of inadequate jurisdiction is denied. *See Also: Kulavic v. Chicago & Illinois Midland Railway Co.,* 1 F.3d 507 (7th Cir.1993); *Medina v. I.N.S.,* 1 F.3d 312 (5th Cir.1993); *Graves v. Pennsylvania Human Relations Commission,* 160 Pa.Cmwlth. 65, 634 A.2d 701 (1993).

B. *Legal Standards Governing Motions for New Trial and/or to Alter or Amend Judgments under Rules 50 and 59.*

Defendants next assert that the jury's verdict in this matter must be set aside and that they are entitled to the entry of judgment in their favor as a matter of law or to a new trial because the plaintiff failed to adduce that quantum of evidence upon which the jury could reasonably have found that the

University breached the January 10, 1990 settlement agreement or to support the damages award that was ultimately issued. In this regard, the defendants also assert that the plaintiff did nothing to mitigate her damages. In so arguing, defendants invoke the provisions of Fed.R.Civ.P. Nos. 50(a) and (b), and 59(a), (b) and (e) which state in pertinent part:

### Rule 50. Judgment as a Matter of Law in Actions Tried by Jury; Alternative Motion for New Trial; Conditional Rulings.

#### (a) Judgment as a Matter of Law.

(1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

. . . . .

#### (b) Renewal of Motion for Judgment After Trial; Alternative Motion for New Trial.

Whenever a motion for a judgment as a matter of law made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Such a motion may be renewed after service and filing of not later than 10 days after entry of judgment. A motion for a new trial under Rule 59 may be joined with a renewal of the motion for judgment as a matter of law, or a new trial may be requested in the alternative. If a verdict was returned, the court may, in disposing of the renewed motion, allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as a matter of law . . . . . . . .

### Rule 59. New Trials; Amendment of Judgments.

(a) Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States; and (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States . . . . .

(b) Time for Motion. A motion for a new trial shall be served not later than 10 days after the entry of the judgment.

. . . . .

(e) Motion to Alter or Amend a Judgment. A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment.

■ As is clear from the foregoing, a court cannot enter judgment as a matter of law unless the party seeking the judgment made a Rule 50(a) motion at the close of all the evidence at trial. *Markovich v. Bell Helicopter Textron, Inc.,* 805 F.Supp. 1231, 1234 (E.D.Pa.1992); *Windsor Shirt Co. v. New Jersey National Bank,* 793 F.Supp. 589, 594 (E.D.Pa.1992). Assuming such a motion has first been made, the court, in deciding whether a Rule 50(b) motion should be granted, must view the evidence in the light most favorable to the non-moving party and determine whether the record contains the minimum quantum of evidence from which a jury might reasonably afford relief. *Keith v. Truck Stops Corp. of America,* 909 F.2d 743, 745 (3rd Cir.1990) citing, *inter alia, Kelly v. Matlack, Inc.,* 903 F.2d 978, 981 (3rd Cir. 1990), *Blum v. Witco Chemical Corp.,* 829 F.2d 367, 372 (3rd Cir.1987), and *Smollett v. Skayting Dev. Corp.,* 793 F.2d 547, 548 (3rd Cir.1986); *Markovich, supra.*

■ Although judgment as a matter of law should be granted sparingly, federal courts do not follow the rule that a scintilla of evidence is enough. The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon

which the jury could properly find a verdict for that party. *Walter v. Holiday Inns, Inc.,* 985 F.2d 1232, 1238 (3rd Cir.1993); *Bond v. Morton Buildings, Inc.,* 815 F.Supp. 944, 945 (S.D.W.Va.1993). Stated otherwise, such a motion should be granted only if no jury could reasonably have decided in favor of the non-moving party. *See: Walter v. Holiday Inns,* at 1238.

The standards governing the grant of a new trial are somewhat less stringent than those required for the entry of judgment as a matter of law. In general, the ordering of a new trial is committed to the sound discretion of the district court. *Bonjorno v. Kaiser Aluminum and Chemical Corp.,* 752 F.2d 802, 812 (3rd Cir.1984), *cert. denied,* 477 U.S. 908, 106 S.Ct. 3284, 91 L.Ed.2d 572 (1986); *Windsor Shirt Co. v. New Jersey National Bank, supra,* at 595. Since granting the motion for a new trial acts to overturn a jury verdict, the court will not set aside the jury's verdict unless manifest injustice will result if the verdict is allowed to stand and hence a new trial should be granted only if there has been a miscarriage of justice. *Carlisle v. Consolidated Rail Corp.,* 790 F.Supp. 521, 530 (E.D.Pa.1992). A new trial cannot be granted, however, merely because the court would have weighed the evidence differently and reached a different conclusion and it has therefore been said that a court can only exercise its discretion to grant a new trial because the verdict was against the weight of the evidence when the failure to do so would shock the conscience of the court. *Markovich,* at 1235, citing, *inter alia, Williamson v. Consolidated Rail Corp.,* 926 F.2d 1344, 1352–53 (3rd Cir.1991).

Viewing all of the evidence of record in the light most favorable to the plaintiff, we find the jury's verdict to be sufficiently supported thereby. At the outset, we note that paragraphs 1 and 2 of the January 10, 1990 settlement agreement (Exhibit P–3), provided that:

1. The University shall employ Ms. Smithgall in a temporary position of Research Dietician beginning February 1, 1990 and ending November 30, 1990. Dr. James L. Mullen shall be Ms. Smithgall's supervisor. Ms. Smithgall's salary and benefits shall be the same as the salary and benefits that she received in her prior position as a Research Dietician in the University's Department of Surgery. The University shall bridge Ms. Smithgall's benefits in the temporary position as if she had not had a break in full time regular employment at the University.

2. Unless Ms. Smithgall is employed in a full time capacity by an employer other than the University, Ms. Smithgall shall automatically be considered a candidate for the next open Nutritional Support Service R.D. position in the University's Department of Surgery; provided, however, that Ms. Smithgall shall submit her resume to the hiring supervisor at the time of such an opening. The parties agree that Ms. Smithgall's performance in the temporary position will be considered along with her other qualifications in determining her acceptability for such Nutritional Support Service position. The search for the next Nutritional Support Service position will be scrutinized by the Office of the General Counsel and the Office of Affirmative Action to ensure that the . . . . . University complies with its obligations under this Agreement, its affirmative action policies and procedures and federal, state and city law. In addition, the Department of Surgery will not make an offer to any candidate for the next Nutritional Support Service R.D. position in the absence of prior approval from the University's Office of Administrative Action.

In the event that Ms. Smithgall is not hired for the next open Nutritional Support Service R.D. position because her qualifications do not match the requirements of the specific position, she shall be automatically considered a candidate for the next such available position upon her application therefor, and the terms of this paragraph concerning search procedures shall be fully complied with.

Janet Smithgall testified that she had been employed as a Research Dietician for the University from 1988 until her initial termination on May 30, 1989 and that her duties at that time consisted of setting up study protocols on large numbers of patients, monitoring and working clinically on those patients. Although it was Mrs. Smithgall's understanding

at the time she signed the settlement agreement that she would continue to perform the same functions as a Research Dietician that she had performed prior to May 30, 1989, her responsibilities after the settlement agreement was executed instead consisted of going through stacks of journals, tearing them apart and photocopying, collating, stapling and distributing them to members of the Journal Club for review at their lunchtime meetings, for organizing and sorting through a large volume of Dr. Mullen's personal and professional slides and for cleaning up the audio-visual room. (N.T. 12/14/93, 5–18; 12/15/93, 142–149). Apparently due to the limited amount of working space available, the plaintiff was first assigned to work in a glass washing, mop storage area that was also utilized by a member of the janitorial staff. When she complained to Margaret Staats, the Administrative Director of Nutrition Support Services, she was then shown to the former surgical residents' library and sleeping quarters several buildings away. (N.T. 12/14/93, 21–29; N.T. 12/15/93, 105–109, 122–124, 134–135, 151–154, 165–169). Eventually, Mrs. Smithgall testified, she found space herself in a storage room, cleaned it out and worked out of there. (N.T. 12/14/93, 33–35).

The testimonial evidence further evinces that although there were no openings *per se* for Nutrition Support Services Dieticians after the parties entered into the settlement agreement, in September, 1990, the Department of Food and Nutrition Services underwent a departmental reorganization which involved the creation of nine new positions. These positions, according to the testimony of former HUP Associate Administrator Sandra Stein, represented an upgrading of the then-current positions and were to be filled with current department members. The new positions, however, were not posted or offered outside of the immediate department. (N.T. 12/14/93, 43, 47–52, 63–66, 112–113; N.T. 12/15/93, 38–46). In addition, Ms. Stein also testified that she had met with Janet Smithgall in early June, 1990 at Mrs. Smithgall's request and that at that meeting Mrs. Smithgall outlined her professional experience and qualifications and presented a proposal for a restructure of the department.

At that time, however, Ms. Stein indicated that she would not consider restructuring the department and that while she understood that Janet Smithgall was interested in a management position, there were no management positions open in the department. (N.T. 12/15/93, 35–36) What's more, according to the testimony of Margaret Staats, there have not been any Research Dieticians in Nutrition Support Services at least since she was first employed there in 1987. (N.T. 12/14/93, 42–43; 12/15/93, 115–117). This evidence is, we find, clearly sufficient to sustain the jury's conclusion that the defendants breached the agreement which they entered into with the plaintiff on January 10, 1990 with regard to their promise to consider her for any R.D. positions in Nutrition Support Services and to employ her in a research, as opposed to a clerical, position. *See: General State Authority v. Coleman Cable & Wire Co.*, 27 Pa.Cmwlth. 385, 365 A.2d 1347 (1976).

Turning next to the evidence which was produced with respect to the issues of damages and mitigation of damages, we again observe that Mrs. Smithgall testified that the salary ranges for three of the new positions developed as a result of the reorganization, were $49,000 to $52,000 per year for the Assistant Director of Nutrition, $41,000 to $49,000 per year for the Research Dietician Coordinator, and $32,000 per year for a staff dietician's position. (N.T. 12/14/93, 66–70, 73–76, 101–103). Mrs. Smithgall further stated that for 1990, 1991 and 1992, her total annual income was $18,112.26, $9,500 and $15,526.50, respectively. (N.T. 12/14/93, 103–104, 112–113, 147–149). Finally, the record reveals that following her November 30, 1990 separation from the University's Harrison Department of Surgical Research, the plaintiff was employed on a temporary basis with Paoli Memorial Hospital in Paoli, Pennsylvania as the Chief Assistant to the Director of Nutrition Services from January to June, 1991 and that because she had been unable to find other employment in June, 1991 when her temporary position at Paoli had concluded, Mrs. Smithgall returned to the University of Pennsylvania in July, 1991 as a documents coder. (N.T. 12/14/93, 75–82). Although we acknowledge that Mrs. Smithgall

also admitted to having been offered a full-time, permanent position at the Eastern State Psychiatric Hospital and to the fact that the Philadelphia Inquirer did have advertisements for various positions in her and related fields at other facilities and with organizations other than the University of Pennsylvania, we nevertheless can reach no other conclusion after viewing the above-referenced evidence in the most favorable light toward the plaintiff, that adequate evidence was presented at trial such as would justify the jury's award and findings on the issues of damages and mitigation and its implicit finding that the plaintiff was not barred from recovering damages over and above those provided for in the settlement agreement. Accordingly and for all of the above-stated reasons, we must therefore decline defendants' request to disturb the jury's verdict in this case and deny the post-trial motions in their entirety. An appropriate order follows.