Joseph HALSTEAD

v.

MOTORCYCLE SAFETY
FOUNDATION INC.,
et. al.

No. 99–CV–2199.

United States District Court,
E.D. Pennsylvania.

Oct. 8, 1999.

William W. Spalding, Abraham Bauer & Spaulding, P.C., Philadelphia, PA, for Plaintiff.

Paul C. Vitrano, Ross, Dixon & Bell, L.L.P., Washington, DC, Claudia M. Tesoro, Office of Atty. General, Philadelphia, PA, for Defendants.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

By way of the motion which is now before us, the Defendant Motorcycle Safety Foundation moves to partially dismiss the Plaintiff's Amended Complaint. For the reasons which follow, the motion shall be granted.

### Background

This case arises out of a written contract between the Pennsylvania, Department of Transportation ("PennDot") and the Motorcycle Safety Foundation ("MSF"), a private corporation, pursuant to which MSF would conduct and oversee a Motorcycle Safety Program for PennDot. Mr. Halstead contends that his name, personal qualifications and resume were used by MSF as part of the bid which MSF submitted to obtain the PennDot contract. Specifically, MSF's bid represented that Mr. Halstead's qualifications would be the minimum qualification for the position of State Coordinator and that the position of State Coordinator would be offered to Mr. Halstead first and only offered to another candidate if plaintiff refused to accept the job offer.

According to the Amended Complaint, despite these representations, MSF did not offer him the position of State Coordinator for the Motorcycle Safety Program. Plaintiff alleges that he was not offered the coordinator position because of an interview which he gave to a publication known as the *Citizen's Voice* on August 13, 1998 and because he informed Defendants that MSF's Proposal Project Director, Roberta Carlson, the former State Coordinator for the Pennsylvania Motorcycle Safety Program when it was being overseen by Millersville University, was inappropriately using insider information gathered while

she was a Millersville employee for the benefit of MSF.

Based upon these factual allegations, Plaintiff instituted this suit seeking damages for breach of contract, invasion of privacy, defamation, tortious interference with third party and prospective contractual relations, punitive damages and for violations of his civil rights under 42 U.S.C. § 1983 and the Pennsylvania Whistleblower Law, 43 P.S. 1421, *et. seq.* Through this motion, MSF seeks to dismiss Counts I (breach of contract), IV (Section 1983), XI (Whistleblower Law) and XII (punitive damages) of the Amended Complaint with prejudice.

### Standards Governing Motions to Dismiss

The rules governing the pleading of cases in the district courts are clear. Under Fed.R.Civ.P.8(a),

"A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks. Relief in the alternative or of several different types may be demanded."

■ It is equally clear that the issue of the sufficiency of a pleading may be raised by the filing of a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6) or through a motion for a more definite statement under Rule 12(e). In resolving a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may also be taken into account.

*Chester County Intermediate Unit v. Pennsylvania Blue Shield,* 896 F.2d 808, 812 (3rd Cir.1990). In so doing, the court must accept as true the facts alleged in the complaint, together with all reasonable inferences that can be drawn therefrom and construe them in the light most favorable to the plaintiff. *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3rd Cir.1990); *Hough/Loew Associates, Inc. v. CLX Realty Co.,* 760 F.Supp. 1141 (E.D.Pa.1991). The court's inquiry is directed to whether the allegations constitute a statement of a claim under Rule 8(a) and whether the plaintiff has a right to any relief based upon the facts pled. Dismissal under Rule 12(b)(6) for failure to state a claim is therefore limited to those instances where it is certain that no relief could be granted under any set of facts that could be proved. *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3rd Cir.1988); *Angelastro v. Prudential–Bache Securities,Inc.,* 764 F.2d 939, 944 (3rd Cir.1985), *cert. denied,* 474 U.S. 935, 106 S.Ct. 267, 88 L.Ed.2d 274 (1985).

### Discussion

### A. Plaintiff's Claim for Breach of Contract.

The Motorcycle Safety Foundation first argues that Plaintiff has failed to state a claim against it for breach of contract since it did not have an express contract with Plaintiff, an implied contract cannot be established as a matter of law and the plaintiff is not a third-party beneficiary of the agreement between MSF and Penn-Dot.

■ It is hornbook law that to make out a cause of action for breach of contract, the plaintiff must plead and prove (1) the existence of a contract to which the plaintiff and defendant were parties; (2) the essential terms of the contract; (3) a breach of the duty imposed by the contract and (4) that damages resulted from the breach. *Electron Energy Corp. v. Short,* 408 Pa.Super. 563, 597 A.2d 175 (1991),

*aff'd,* 533 Pa. 66, 618 A.2d 395 (1993); *General State Authority v. Coleman Cable & Wire Co.,* 27 Pa.Cmwlth. 385, 365 A.2d 1347 (1976). To be sure, an express contract is formed when the terms of an agreement are declared by the parties. *Department of Environmental Resources v. Winn,* 142 Pa.Cmwlth. 375, 597 A.2d 281, 284, n. 3 (1991), *citing, Central Storage & Transfer Co. v. Kaplan,* 37 Pa. Cmwlth. 105, 389 A.2d 711 (1978), *aff'd,* 487 Pa. 485, 410 A.2d 292 (1979).

Where no such clear declaration exists, however, a contract may be implied—either in fact or in law. A contract implied in fact is an actual contract which arises when parties agree upon the obligation to be incurred, but their intention is not expressed in words and is, instead, inferred from their actions in light of the surrounding circumstances. *Id.* A contract implied in law, or quasi-contract, is a duty imposed by law upon a person who has obtained property or services under circumstances where reason, common sense and justice dictate that payment should be made therefor. *Garofolo v. Commonwealth, Department of Revenue,* 167 Pa.Cmwlth. 672, 648 A.2d 1329, 1334 (1994).

Unlike true contracts, quasi-contracts are not based on the apparent intention of the parties to undertake the performances in question, nor are they promises; they are obligations created by law for reasons of justice. *Schott v. Westinghouse Electric Corporation,* 436 Pa. 279, 259 A.2d 443 (1969). Quasi-contracts may be found in the absence of any expression of assent by the party to be charged and may indeed be found in spite of the party's contrary intention. *Id.* In essence then, quasi-contract is a cause of action designed to cure unjust enrichment; to recover, a claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that would be unconscionable for the party to retain without compensating the provider. *Allied Fire & Safety Equipment Co.*

*v. Dick,* 886 F.Supp. 491, 495 (E.D.Pa. 1995), *citing Hershey Foods Corp. v. Ralph Chapek, Inc.,* 828 F.2d 989, 999 (3rd Cir.1987) and *Torchia v. Torchia,* 346 Pa.Super. 229, 499 A.2d 581 (1985). Although plaintiffs are free to pursue the alternative theories of recovery of breach of contract and unjust enrichment, the finding of a valid contract prevents a party from recovering for unjust enrichment as the measure of damages is limited to that which is provided for in the contract itself. *U.S. v. Kensington Hospital,* 760 F.Supp. 1120, 1135 (E.D.Pa.1991). *See Also: Matter of Penn Central Transportation Co.,* 831 F.2d 1221, 1230 (3rd Cir.1987).

Applying these principles to the plaintiff's amended complaint, we can reach no other conclusion but that it fails to state a cause of action for breach of contract or quasi-contract/unjust enrichment. Indeed, the contract attached to Plaintiff's pleading and upon which he relies was between the Motorcycle Safety Foundation and PennDot. Mr. Halstead was not a party to that contract and thus he cannot state a cause of action for its breach.

Likewise, there is nothing in either the amended complaint or in the written contract which suggests that the plaintiff himself agreed to or did perform any services or undertake any obligations to either the MSF or PennDot in exchange for which they could be found to have unjustly reaped a benefit as a consequence of plaintiff's actions on their behalf. Rather, what appears from the proposal submitted by MSF to PennDot is that MSF at most used the plaintiff's name without his authorization and apparently misrepresented that it would be offering the job of State Coordinator to him. While this may have been a misappropriation of Mr. Halstead's name, we cannot find that unauthorized use of one's name equates to the conferring of a benefit by that individual upon the misappropriating entity. Plaintiff's claim for unjust enrichment therefore fails.

We likewise cannot find that Plaintiff has pled a claim upon which relief may be granted under the theory that he was a third-party beneficiary of the MSF/PennDot contract. This is because it has long been the law in Pennsylvania that, for a third party beneficiary to have standing to recover on a contract, both contracting parties must have expressed an intention that the third party be a beneficiary and that intention must have affirmatively appeared in the contract itself. *Scarpitti v. Weborg*, 530 Pa. 366, 609 A.2d 147, 149 (1992) *citing Spires v. Hanover Fire Insurance Co.*, 364 Pa. 52, 70 A.2d 828 (1950); *Mentzer v. Ognibene*, 408 Pa.Super. 578, 597 A.2d 604, 613 (1991); *University Patents, Inc. v. Kligman*, 762 F.Supp. 1212, 1229 (E.D.Pa.1991). In the absence of some statutory, common law, or equitable duty, the parties to an agreement simply have no obligation to a nonparty, regardless of the extent to which that nonparty is interested in enforcement or abrogation of the contract. *Rottmund v. Continental Assurance Co.*, 761 Supp. 1203, 1208 (E.D.Pa.1990). Further, the burden is on one who claims under a contract to show that he has a cognizable interest therein. *Id.,citing Fourtees Co. v. Sterling Equipment Corp.*, 242 Pa.Super. 199, 363 A.2d 1229, 1232 (1976).

In this case, Plaintiff does not plead nor does the MSF/PennDot contract evince that there was ever any intention on the part of the contracting parties that Mr. Halstead would be a beneficiary thereunder. Although we would agree with Plaintiff that it is certainly conceivable that he would reap some benefits should he accept employment as the State Coordinator of Pennsylvania's Motorcycle Safety Program and would therefore be an unintended, ancillary beneficiary, a clear reading of the contract and the annexed proposal demonstrates that the only third party beneficiaries contemplated under that agreement were those citizens of the Commonwealth of Pennsylvania who participated or were eligible to participate in the state's Motorcycle Safety Program. Accordingly, Count I of the Amended Complaint shall be dismissed with prejudice.

## B. Plaintiff's Claim Under 42 U.S.C. § 1983.

MSF next moves for the dismissal of Plaintiff's claim under 42 U.S.C. § 1983 that it violated his First Amendment right to freedom of speech in purportedly not hiring him in retaliation for an interview which he gave to the *Citizen's Voice*. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom or usage of any state, territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress.

*See, e.g.: Patzig v. O'Neil*, 577 F.2d 841, 850 (3rd Cir.1978).

To make out a claim under Section 1983, a plaintiff must demonstrate that the conduct of which he is complaining has been committed under color of state or territorial law and that it operated to deny him a right or rights secured by the Constitution or laws of the United States. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980); *Abdul–Akbar v. Watson*, 901 F.2d 329, 332 (3rd Cir.1990), *cert. denied*, 498 U.S. 806, 111 S.Ct. 237, 112 L.Ed.2d 196 (1990). The plaintiff must also establish that it was the acts of the defendants which caused the constitutional deprivation. *See: Rizzo v. Goode*, 423 U.S. 362, 370–371, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976); *Duchesne v. Sugarman*, 566 F.2d 817, 831 (2nd Cir. 1977).

Since Section 1983 regulates the relationship between state officials and individuals, the threshold question in a

§ 1983 suit is whether the defendant was a state actor, acting in an official capacity, at the time of the alleged constitutional violation. *Doe v. William Shapiro, Esquire, P.C.,* 852 F.Supp. 1246, 1253 (E.D.Pa. 1994). Although a party may cause a deprivation of a right, it may be subjected to liability under § 1983 only when it does so under color of law. *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 156, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law. *West v. Atkins,* 487 U.S. 42, 49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988); *Rodriguez v. City of Milwaukee,* 957 F.Supp. 1055, 1063 (E.D.Wis.1997). The Supreme Court, in turn, has clarified that "[i]n cases under § 1983, 'under color' of law has consistently been treated as the same thing as the 'state action' requirement under the Fourteenth Amendment." *Mark v. Borough of Hatboro,* 51 F.3d 1137, 1141 (3rd Cir.1995); *Spencer v. Steinman,* 968 F.Supp. 1011, 1017 (E.D.Pa.1997), *both citing, United States v. Price,* 383 U.S. 787, 794 n. 7, 86 S.Ct. 1152, 1157, n. 7, 16 L.Ed.2d 267 (1966).

■ The state action principle is stated succinctly as follows: "[A]t base, constitutional standards are invoked only when it can be said that the government is *responsible* for the specific conduct of which the plaintiff complains." *Mark v. Borough of Hatboro,* 51 F.3d at 1141–1142, *quoting Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 632, 111 S.Ct. 2077, 2089, 114 L.Ed.2d 660 (1991); *Spencer v. Steinman,* 968 F.Supp. at 1018. Put differently, deciding whether there has been state action requires an inquiry into whether there is a sufficiently close nexus between the state and the challenged action so that the action of the latter may be fairly treated as that of the state itself. *Id.* Similarly, state action may be found if a private party has acted with the help of or in concert with state officials or where it may be found that a private party has been delegated a power traditionally exclusively reserved to the state. *McKeesport Hospital v. Accreditation Council for Graduate Medical Education,* 24 F.3d 519, 524 (3rd Cir.1994). *See Also: Alexis v. McDonald's Restaurants of Massachusetts,* 67 F.3d 341, 351–352 (1st Cir.1995). .

■ In application of all of the foregoing, we find that the amended complaint fails to allege sufficient facts from which it may be found that the Motorcycle Safety Foundation was acting under color of state law when it purportedly made the decision to not offer the position of State Coordinator to Mr. Halstead. To be sure, there are absolutely no averments which suggest that the alleged violation of Mr. Halstead's free speech rights was made possible only because MSF was clothed with the authority of state law. On the contrary, a common-sense reading of the amended complaint leads only to the conclusion that while MSF is an independent contractor offering motorcycle training and education to citizens of the Commonwealth of Pennsylvania pursuant to an agreement with the Department of Transportation, it retained autonomy and control over its own internal hiring process. Thus, when one considers that the functions which MSF was to serve on behalf of PennDot were specifically enumerated in the written contract, the pleading clearly fails to suggest that in making the decision to not offer Mr. Halstead a job, MSF was acting in an official capacity on behalf of PennDot so as to have been transformed into a "state actor." Accordingly, Count IV of the Amended Complaint shall also be dismissed.

### C. Plaintiff's Claims under the Pennsylvania Whistleblower Law, 43 P.S. § 1421, *et. seq.*

Defendant additionally moves to dismiss Plaintiff's claim against it under the Pennsylvania state Whistleblower Law, 43 P.S.

§ 1421, *et. seq.* on the grounds that MSF is not an "employer" under the Whistleblower Law and that Plaintiff's report of alleged wrongdoing was inadequate to trigger the protection afforded by that law.

Specifically, Section 1423 of the Pennsylvania Whistleblower Law provides:

**(a) Persons not to be discharged.**– No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste.

**(b) Discrimination prohibited.**– No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee is requested by an appropriate authority to participate in an investigation, hearing or inquiry held by an appropriate authority or in a court action.

Under 43 P.S. § 1424(a), "[a] person who alleges a violation of this act may bring a civil action in a court of competent jurisdiction for appropriate injunctive relief or damages, or both, within 180 days after the occurrence of the alleged violation."

The Whistleblower Law, however, applies only to public employees who are discharged or otherwise discriminated or retaliated against by governmental entities. *See: Clark v. Modern Group, Ltd.,* 9 F.3d 321, 326, n. 4 (3rd Cir.1993); *Holewinski v. Children's Hospital of Pittsburgh,* 437 Pa.Super. 174, 649 A.2d 712, 715 (1994); *Krajsa v. Keypunch, Inc.,* 424 Pa.Super. 230, 622 A.2d 355, 359–360 (1993). To be sure, under the Definitions portion of the statute, 43 P.S. § 1422, "employee" is defined as "[a] person who performs a service for wages or other remuneration under a contract of hire, written or oral, express or implied, for a public body." "Employer," in turn, is "[a] person supervising one or more employees, including the employee in question; a superior of that supervisor; or an agent of a public body." A "public body" is defined to include all of the following:

(1) A state officer, agency, department, division, bureau, board, commission, council, authority or other body in the executive branch of State government.

(2) A county, city, township, regional governing body, council, school district, special district or municipal corporation, or a board, department, commission, council or agency.

(3) Any other body which is created by Commonwealth or political subdivision authority or which is funded in any amount by or through Commonwealth or political subdivision authority or a member or employee of that body.

The language "funded in any amount by or through Commonwealth or political subdivision authority or a member or employee of that body" has been held to have been intended by the legislature to be limited to monies which were appropriated by the legislature for the purpose of aiding "public bodies" in pursuit of their public goals and was obviously not intended to make an individual or corporation a "public body" solely on the basis that monies were received by it from the state as reimbursement for services rendered. *Cohen v. Salick Health Care, Inc.,* 772 F.Supp. 1521, 1527 (E.D.Pa.1991); *Riggio v. Burns,* Pa.Super., 711 A.2d 497, (1998), *appeal granted,* 739 A.2d 167 (Pa.1998).

In this case, we find the plaintiff's Amended Complaint insufficient to state a Whistleblower cause of action against the Motorcycle Safety Foundation given Mr. Halstead's failure to allege that he was ever an employee of either MSF or Penn-Dot, let alone an employee of a public body. Although in Count XI of the

Amended Complaint, Mr. Halstead contends that both MSF and PennDot discriminated and retaliated against him "by discharging him, refusing to employ him and/or refusing to continue to employ him for the Pennsylvania Motorcycle Safety Program on January 1, 1999 ..." he elsewhere alleges that "prior to December 31, 1998, [he] was an employee of the Pennsylvania Motorcycle Safety Program then being run by Millersville University," and that as the result of his having disclosed his concerns regarding the possible use of insider information, he was not offered the position of State Safety Coordinator by MSF. As regards MSF, the Amended Complaint avers that it "is a corporation organized and existing under the laws of the State of California with its principal place of business as set forth [in the caption]." Nowhere does Plaintiff allege that MSF was funded by the Commonwealth. Thus, contrary to Mr. Halstead's conclusory allegations that he was an employee and Defendants were employers as defined under 43 P.S. § 1422, it is clear from the face of the amended complaint that Plaintiff's proposed Whistleblower cause of action cannot stand against MSF. Count XI is therefore dismissed with respect to the moving defendant.

### D. Plaintiff's Punitive Damages Claim.

Finally, the Motorcycle Safety Foundation asks for the dismissal of Count XII of the Amended Complaint, because Pennsylvania law does not recognize an independent cause of action for punitive damages.

In Pennsylvania, punitive damages are an element of damages arising out of an initial cause of action for compensatory damages. *Kirkbride v. Lisbon Contractors, Inc.*, 521 Pa. 97, 555 A.2d 800, 802 (1989), *citing Hilbert v. Roth*, 395 Pa.

270, 149 A.2d 648 (1959). Hence, if no underlying cause of action exists, there is no independent action for a claim for punitive damages. *Id.*

Moreover, punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. *Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742, 747 (1984); *Doe v. William Shapiro, Esquire*, 852 F.Supp. 1246, 1255 (E.D.Pa.1994). In assessing punitives, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause and the wealth of the defendant. *Feld v. Merriam*, 485 A.2d at 748; *Doe v. Shapiro*, supra. *See Also: Polselli v. Nationwide Mutual Fire Insurance Co.*, 23 F.3d 747, 751 (3rd Cir.1994); *Burke v. Maassen*, 904 F.2d 178, 181 (3rd Cir.1990).

Here, while the plaintiff has conceded that no independent cause of action exists for punitive damages, he argues that under the Federal notice pleading standard, he should nevertheless be permitted to seek punitive damages at trial. Nowhere in the amended complaint, however, does Mr. Halstead allege conduct which is sufficiently outrageous or motivated by an evil motive or reckless disregard for the rights of others such that it could be deemed to support a claim for punitive damages under Pennsylvania law. We therefore grant the motion to dismiss this claim as well.[1]

For all of the foregoing reasons, the Motorcycle Safety Foundation's Motion to Partially Dismiss the Plaintiff's Amended Complaint is granted and the attached order is entered.

---

1. Of course, should the plaintiff unearth evidence through the discovery process which demonstrates that the moving defendant acted in such an outrageous manner and/or with such an evil motive or reckless disregard for his rights that it could arguably support a claim for punitive damages, he shall not be foreclosed from subsequently re-filing this claim or requesting that the jury be charged with respect to punitive damages. *See, e.g.:* Fed.R.Civ.P. 15.

## ORDER

AND NOW, this day of October, 1999, upon consideration of the Motion of Defendant Motorcycle Safety Foundation, Inc. to Partially Dismiss the Plaintiff's Amended Complaint and Plaintiff's Response thereto, it is hereby ORDERED that the Motion is GRANTED, and Counts I and IV and Plaintiff's claims against the Moving Defendant set forth in Counts XI and XII are DISMISSED from the Amended Complaint.