**UNITED STATES of America, Plaintiff,**

v.

**David A. NUTTALL, Defendant.**

**Civ. A. No. 87–541–JLL.**

United States District Court,
D. Delaware.

Sept. 27, 1988.

William C. Carpenter, Jr., U.S. Atty., and Kent A. Jordan, Asst. U.S. Atty., Wilmington, Del., and William S. Rose, Jr., Asst. Atty. Gen., Edward J. Snyder and Delores M. Dillmann, Attys., Tax Div., Dept. of Justice, Washington, D.C., of counsel, for plaintiff.

Thomas Stephen Neuberger, Wilmington, Del., and Peter Goldberger, Philadelphia, Pa., of counsel, for defendant.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

### I. INTRODUCTION

In this action to reduce federal tax assessments to judgment, the Court presently has for its determination six motions by the parties. The six motions, and the Court's disposition of each, are as follows:

1. Defendant's motion to set aside Entry of Default and Judgment of Default will be granted. *See* part III.A. of this opinion, *infra.*

2. Defendant's motion to enjoin enforcement of the Judgment of Default will be denied. *See* part III.B.

3. Defendant's motion to dismiss the action will be denied. *See* part III.C.

4. Plaintiff's motion for enlargement of the time in which to serve defendant will be granted. *See* part III.D.

5. Defendant's motion for costs and attorneys' fees under Rule 11 will be denied. *See* part III.E.

6. Plaintiff's motion for an award of the cost of obtaining service on defendant will be denied, with leave to renew the motion when service is completed. *See* part III.F.

### II. FACTS

On October 9, 1988, the United States (plaintiff) filed a complaint in this Court to reduce to judgment federal tax assessments against defendant David A. Nuttall. (Docket Item ["D.I."] 1.) Plaintiff then began what has turned out to be the monumental task of serving defendant—a self-styled "conscientious objector." (D.I. 4, Ex. B.) Twice plaintiff mailed copies of the

summons and complaint to defendant, but defendant did not return the enclosed acknowledgment form pursuant to Fed.R.Civ. P. 4(c)(2)(C)(ii). (D.I. 5 at ¶ 6.) Plaintiff then resorted to service by personal delivery. *See* Fed.R.Civ.P. 4(c)(2)(C)(ii), 4(d)(1). Plaintiff, through its agents, went to defendant's residence[1] on no fewer than 18 occasions, at various times of day, but was unable to serve defendant. (D.I. 12 at 3.)

During this period of attempted personal service of process, Deputy United States Marshals allegedly spoke to defendant twice by telephone. In the first telephone conversation (initiated by defendant), defendant stated that he was not willing to make it easy for the Government to serve him and collect its taxes. (D.I. 4, Ex. C.) Defendant allegedly indicated that he had received copies of the complaint in the mail. *Id.* Moreover, the deputy marshal read the complaint to defendant aloud over the telephone. *Id.* In the second telephone conversation (initiated by a deputy marshal) defendant reiterated his conscientious objector beliefs and again stated that he would refuse service. (D.I. 4 at ¶ 7.)

A letter to the Deputy United States Marshal from defendant (dated March 13, 1988) contains the following tacit admission of defendant's actual notice of this lawsuit. "To the best of my knowledge, these documents [i.e. the summons and complaint] pertain to my ongoing conflict with the Internal Revenue Service . . . ." (D.I. 4, Ex. B.)[2] The mailing envelope containing defendant's letter included the notation "re. 87–541." *Id.* Such is the docket number assigned to this litigation, and would only be known to defendant if he were informed of the suit.

Only after the foregoing sequence of events (including defendant's admission of actual notice), did plaintiff file a Return of Service and notify defendant to respond within 20 days or risk entry of a default judgment. (D.I. 5; 12 at 4–5.) Defendant did not so respond. Plaintiff then requested a default judgment, which was entered by order of this Court on July 22, 1988. (D.I. 7, 8.) Plaintiff thereafter initiated efforts to execute the default judgment. (D.I. 11 at 2.) Only then did defendant see fit to grace these proceedings with his presence. Rather than taking the trouble to return the acknowledgment by mail so as to complete service of process, defendant through his counsel moves to set aside the default judgment and to dismiss the action for invalid service of process.[3] The parts of this opinion which follow describe the Court's action on this and other motions made by the parties.

## III.  ANALYSIS

### A.  *Defendant's Motion To Set Aside The Default*

■ Defendant moves to set aside the Entry of Default and the Judgment of Default on the ground of improper service of process. (D.I. 11 at 6 (citing Fed.R.Civ.P. 55(c), 60(b)(4)).) Defendant is correct. Plaintiff nowhere asserts that service was effected upon defendant by personal delivery as authorized under Fed.R.Civ.P. 4(d)(1). Therefore process was served, if at all, pursuant to Fed.R.Civ.P. 4(c)(2)(C)(ii). Rule 4(c)(2)(C)(ii) permits service by first-class mail. Mail service is complete, however, only upon return by the person served (here defendant Nuttall) of a formal signed acknowledgment "conforming substantially to form 18–A." Fed.R.Civ.P. 4(c)(2)(C)(ii). It is undisputed that defendant never returned such an acknowledgment. (D.I. 5 at ¶ 6, 11 at 2, 12 at 3.) Accordingly, service of process upon de-

---

1. Defendant concedes that plaintiff's agents went to the right place: "You [i.e. plaintiff] know my address . . . ." (D.I. 4, Ex. B.)

2. Defendant in his letter also states that his conscience precludes him from "doing anything to make service of these papers quicker or easier." (D.I. 4, Ex. B.) He then adds: "while I will try to avoid taking any action to facilitate service, I do not intend to evade it." *Id.* Based

upon the magnitude of plaintiff's unsuccessful efforts to effect service and upon defendant's own admissions, the Court is, to say the least, skeptical of defendant's claim that he is not evading service.

3. These and related motions are supported by an eleven-page legal brief filed with this Court as D.I. 11.

fendant was invalid. The Entry of Default and the Judgment of Default are void and therefore must be set aside. Fed.R.Civ.P. 55(c), 60(b)(4).

Plaintiff argues, in essence, that since defendant had actual notice of the lawsuit, strict compliance with the service of process provisions of Fed.R.Civ.P. 4 is unnecessary. Defendant, by virtue of his dilatory tactics, is said to have "waived his objection to defective service by implication." (D.I. 12 at 1.) Intuitively appealing though plaintiff's position may be,[4] it has been rejected by the Third Circuit. In this Circuit, mail service under Rule 4(c)(2)(C)(ii) is effective only if the defendant returns the acknowledgment—actual notice notwithstanding. *Green v. Humphrey Elevator and Truck Co.,* 816 F.2d 877, 881–83 (3d Cir.1987); *Stranahan Gear Co., Inc. v. NL Industries, Inc.,* 800 F.2d 53, 56–57 (3d Cir.1986).[5] Defendant's motion to set aside the default will be granted.

### B. *Defendant's Motion To Enjoin Enforcement Of The Judgment*

■ Defendant also moves for a preliminary injunction forbidding efforts by plaintiff to collect on its default judgment. (D.I. 11 at 2, 7–9.) In the previous section of this opinion the Court set aside the default judgment. There is thus no need to enjoin its enforcement; the motion is denied as moot.

---

**4.** The obvious function of Fed.R.Civ.P. 4 is to ensure that parties are made aware of legal actions commenced against them. Where a defendant in fact has actual notice of a lawsuit, it is reasonable to conclude that the purpose of Rule 4 has, been achieved, and that rigid adherence to every detail of Rule 4 is unnecessary. This conclusion is particularly understandable where the deviation from Rule 4 results from a defendant's willful failure to return the acknowledgment. Other jurisdictions have adopted this position. *See, e.g., Morse v. Elmira Country Club,* 752 F.2d 35, 39–40 (2d Cir.1984). The Third Circuit has not.

**5.** Although this Court is compelled to follow the Third Circuit's *Green* and *Stranahan Gear* decisions *supra,* it should be noted that subtle factual differences do exist between those cases and the instant case. For example, there is no indication in *Green* or in *Stranahan Gear* (in contrast to this case), that the defendant *admitted in writing* to having actually received notice of

### C. *Defendant's Motion To Dismiss*

■ Fed.R.Civ.P. 4(j) provides:

If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show *good cause* why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice....

*Id.* (emphasis added). The United States' complaint against defendant Nuttall was filed October 9, 1987. (D.I. 1.) Process was not served upon defendant within the prescribed 120 days, as once extended until May 4, 1988, by order of this Court. (D.I. 3.) Indeed, defendant is yet to be properly served. Defendant now moves to dismiss the action for failure to effect timely service pursuant to Fed.R.Civ.P. 4(j). (D.I. 11 at 6–7.)

At issue is whether plaintiff's failure to timely serve defendant was for good cause. The presence or absence of good cause for an enlargement of time to effect service is a matter of discretion for a district court. *Dominic v. Hess Oil V.I. Corp.,* 841 F.2d 513, 514, 516–17 (3d Cir.1988); *Braxton v. United States,* 817 F.2d 238, 242 (3d Cir. 1987). Although the Federal Rules of Civil Procedure nowhere define "good cause," courts have considered three factors in determining the existence of good cause.

the lawsuit. Furthermore, plaintiff's efforts to serve Nuttall (including the 18 attempts at personal service) far surpass the steps taken by plaintiffs in *Green* and in *Stranahan Gear* to effect service. Nuttall's efforts to dodge service likewise appear to be more extensive than those undertaken by defendants in *Green* and in *Stranahan Gear.* The foregoing distinctions do not justify a departure from the holdings of *Green* and *Stranahan Gear* that actual notice is no substitute for proper service of process. Nevertheless, these differences are relevant to the issue of whether there is good cause to excuse plaintiff's failure to thus far effectively serve Nuttall. "[W]hile a delay in service of process will not be countenanced for lack of diligence or inadvertence by counsel, good cause might be shown if the defendant intentionally evades service of process." *Dominic v. Hess Oil V.I. Corp.,* 841 F.2d 513, 516 (3d Cir.1988) (citing *Lovelace v. Acme Markets, Inc.,* 820 F.2d 81 (3d Cir.1987)). *See also* discussion in part III.C. of this opinion.

The first factor is whether the delay in service results from mere inadvertence, or conversely whether the plaintiff made a reasonable effort to effect service. *Gordon v. Hunt*, 116 F.R.D. 313, 319 (S.D.N.Y. 1987), *aff'd*, 835 F.2d 452 (2d Cir.1987), *cert. denied*, ⸺ U.S. ⸺, 108 S.Ct. 1734, 100 L.Ed.2d 198 (1988). "Most courts have adopted [a] diligence standard in determining when a party has shown good cause for an extension." *Shuster v. Conley*, 107 F.R.D. 755, 757 (W.D.Pa.1985). The focus of this first factor is on the plaintiff's efforts. In this case plaintiff's efforts to serve defendant Nuttall have not merely been diligent, but border on heroic. Plaintiff twice mailed copies of the summons and complaint to defendant. (D.I. 12 at 2.) Officers of the United States Marshal's Office and of the Internal Revenue Service went to defendant's residence six different times to serve process personally, but to no avail. (D.I. 12 at 3.) Plaintiff then secured a 90–day extension, and proceeded to hire a private process server who made an additional 12 futile attempts to serve defendant personally. (D.I. 12 at 3.) Deputy United States Marshals also spoke to defendant by telephone on two occasions, once reading the complaint aloud to defendant. (D.I. 4 at ¶ 6 & Ex. C.) Only after the foregoing events, and after receiving a letter from Nuttall in which the defendant referred to the lawsuit (and even noted the docket number on the envelope) did the plaintiff file a Return of Service. (D.I. 5; 12 at 2–4.) This filing occurred on May 4, 1988, and defendant was served by mail with a copy. (D.I. 5.) Not until July, 1988, did plaintiff request a default judgment, which was entered on July 22, 1988. (D.I. 7, 8.) This Court easily concludes that the great pains taken by plaintiff to serve Nuttall were reasonable efforts, and that plaintiff exercised due diligence.

The second factor in a court's analysis of good cause is whether defendant is prejudiced by the lack of timely service. *Gordon v. Hunt*, 116 F.R.D. at 321. Here defendant's actual knowledge of the lawsuit—which is undisputed—is crucial. *See*

*Dominic v. Hess Oil V.I. Corp.*, 841 F.2d at 517. This actual notice precludes any finding of detrimental reliance by, or prejudice to, defendant Nuttall, notwithstanding that service of process did not comport with every detail of Fed.R.Civ.P. 4.

The third and final factor in evaluating good cause is whether or not plaintiff has moved for an enlargement of time to effect service under Fed.R.Civ.P. 6(b)(1). *Gordon v. Hunt*, 116 F.R.D. at 321. In the instant case plaintiff requested and received one 90–day extension of time in which to serve defendant. That period of time has since expired, and plaintiff filed a Return of Service on May 4, 1988, without requesting a further extension.[6] "An application for enlargement of time in which to serve might well reflect a *plaintiff's diligence* in trying to effect service. However, failure to make such a motion certainly is not by itself fatal to a *plaintiff's efforts* to establish good cause." *Gordon v. Hunt*, 116 F.R.D. at 321 (emphasis added). The above reference to "plaintiff's diligence" indicates to this Court that the third good cause factor is simply a subset of the first factor, which considers the diligence and reasonableness of plaintiff's efforts. As already stated the Court finds that plaintiff's efforts to serve Nuttall, though unsuccessful to date, were eminently reasonable and diligent.

For these reasons the Court concludes that plaintiff had good cause for not serving defendant in a timely fashion under Fed.R.Civ.P. 4(j). Accordingly, defendant's motion to dismiss is denied.

D. *Plaintiff's Motion For Enlargement Of Time In Which To Serve The Defendant*

■ During oral argument plaintiff moved for an enlargement of time in which to serve process upon defendant Nuttall. When by these rules ... an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its *discretion* ... (2) upon motion made after the expi-

---

6. Plaintiff now moves for a retroactive enlargement of time to effect service pursuant to Fed.R.

Civ.P. 6(b)(2). *See* part III.D. of this opinion.

ration of the specified period permit the act to be done where the failure to act was the result of *excusable neglect....* Fed.R.Civ.P. 6(b) (emphasis added). The emphasized language highlights two noteworthy aspects of Rule 6(b). First, the decision of whether or not to permit an enlargement of time is within the Court's discretion. Secondly, success of the motion depends upon finding excusable neglect in plaintiff's failure to timely serve Nuttall.

"Excusable neglect" under Rule 6(b)(2) is no more stringent a standard than "good cause" under Rule 4(j). *Dominic v. Hess Oil V.I. Corp.,* 841 F.2d at 517; *Braxton v. United States,* 817 F.2d 238, 241 (3d Cir. 1987). This Court has already concluded that plaintiff has shown good cause for its inability to timely serve defendant. *See* part III.C. of this opinion, *supra.* A fortiori, plaintiff's neglect was excusable under any definition of that term.[7] Plaintiff's motion for an enlargement of time to serve defendant will be granted. Plaintiff shall be allowed 90 days from the date of entry of the order on this motion (until December 27, 1988) in which to properly serve defendant.

### E. *Defendant's Motion For Costs Under Rule 11*

■ Defendant moves for imposition of costs and attorneys' fees upon plaintiff, pursuant to Fed.R.Civ.P. 11. (D.I. 11 at 9–11.) Rule 11 authorizes a court to impose appropriate sanctions upon the signer of a pleading, motion or other paper unless the document:

> is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and ... is not interposed for any improper purpose, such as to harass or to cause *unnecessary delay or needless increase in the cost of litigation.*

Fed.R.Civ.P. 11 (emphasis added).[8]

Plaintiff's would-be service of defendant was held ineffective, and the resultant default judgment was set aside. *See* part III.A., *supra.* Nevertheless plaintiff's position that service was effective is reasonable, and is supported by precedent from other jurisdictions. *See supra* note 4. In addition, the facts of this case differ somewhat from those of the Third Circuit cases (finding invalid service despite actual notice) relied upon by defendant. *See supra* note 5. Finally, although defendant's motion to set aside the default judgment was granted, defendant's other motions have been denied while plaintiff's motions have been granted (at least in part). *See* parts III.B., C., D., and F. of this opinion. For these reasons, defendant's motion for Rule 11 sanctions is denied.

### F. *Plaintiff's Motion For Costs In Obtaining Service*

■ Plaintiff moves for an award of costs incurred in personally serving defendant. (D.I. 12 at 12.)

---

**7.** Among the factors relevant to a finding of excusable neglect are the following: (1) whether the inadvertence reflected professional incompetence such as ignorance of rules of procedure; (2) whether an asserted inadvertence reflects an easily manufactured excuse incapable of verification; (3) counsel's failure to provide for a readily foreseeable consequence; (4) a complete lack of diligence; (5) whether the inadvertence resulted despite counsel's good faith efforts towards compliance; and (6) whether enlargement of time will prejudice the defendant. *Dominic v. Hess Oil V.I. Corp.,* 841 F.2d at 517. *Cf. Urban v. Talleyville Fire Co.,* 98 F.R.D. 634, 637 (D.Del.1983) (excusable neglect defined as a "course of action taken by a reasonably prudent person under the same or similar circumstances"), *aff'd,* 732 F.2d 147 (3d Cir.1984); Black's Law Dictionary 508 (5th ed. 1979) (defining excusable neglect as "a failure to take the proper steps at the proper time, not in consequence of the party's own carelessness, inattention, or willful disregard of the process of the court, but in consequence of some unexpected or unavoidable hindrance or accident").

**8.** It is ironic that defendant, who admittedly "will try to avoid taking any action to facilitate service" (D.I. 4, Ex. B), and who allegedly stated on January 15, 1988, that he was not "willing to be available to accept service at his residence [on that] date or any other date" (D.I. 4, Ex. C), should suddenly profess a concern for "unnecessary delay or needless increase in the cost of litigation." Equally ironic is defendant's citation to *Gaiardo v. Ethel Corp.,* 835 F.2d 479, 482 (3d Cir.1987) (Rule 11 obligates lawyers to "recogniz[e] the court's duty to serve the public efficiently") (quoted in defendant's brief, D.I. 11 at 10).

Unless good cause is shown for not doing so the court shall order the payment of the costs of personal service by the person served if such person does not complete and return within 20 days after mailing, the notice and acknowledgment of receipt of summons.

Fed.R.Civ.P. 4(c)(2)(D).

Here plaintiff has yet to properly serve defendant. *See* part III.A. *supra.* Accordingly plaintiff's motion for costs of service is premature, and must be denied at this time. It may be renewed, however, if and when service of process is finally completed.

An order will be entered in accordance with this memorandum opinion.