Craig A. **SPENCER**, Plaintiff,

v.

Milton **STEINMAN**, Defendant.

Civil Action No. 96–1792.

United States District Court,
E.D. Pennsylvania.

June 24, 1997.

Jeffrey M. Goldstein, Spector, Gadon and Rosen, P.C., Philadelphia, PA, Thomas A. Leonard, Edmond M. George, Charles M. Golden, David C. Shuter, Obermayer, Rebmann, Maxwell & Hippel, LLP, Philadelphia, PA, for Plaintiff.

Gerard P. Egan, Mark A. Kearney, Elliott, Reihner, Siedzikowsky, Blue Bell, PA, for Defendant.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Plaintiff Craig A. Spencer brought this action under 42 U.S.C. § 1983 [1] against defendant Milton Steinman [2] claiming that James Crumlish, Esquire, one of Steinman's lawyers in a state court action brought by Spencer against Steinman, used his influence with Philadelphia Common Pleas Judge Eugene Maier, the judge presiding over the state action, to gain favorable rulings from Judge Maier in that litigation ("Steinman

---

1. Plaintiff has also alleged sundry state torts based on the same conduct by the defendant.

2. Plaintiff's original complaint was captioned *Arden Phoenix Group v. Steinman.* Plaintiff is the general partner of Arden Phoenix 1700. Furthermore, plaintiff's original complaint named as defendants Steinman and twenty unnamed John and Jane Doe's, who were employees of the Court of Common Pleas of Philadelphia County. Plaintiff's amended complaint, however, which is the subject of the instant motion to dismiss, names only Steinman as defendant.

state court litigation").[3] Defendant has moved to dismiss the amended complaint claiming that (1) the Court is without personal jurisdiction over him since neither the original complaint nor the amended complaint were served upon the defendant within 120 days after filing of the original complaint; (2) that the *Rooker–Feldman* doctrine bars prosecution of the action because to grant plaintiff the relief he seeks, the Court would have to determine that Judge Maier's rulings were wrongly decided; and (3) plaintiff fails to state a § 1983 cause of action under either the "joint participation" or "conspiracy" theories of state action.

The Court finds that (1) while neither the original complaint nor the amended complaint were served within 120 days of the date of filing the original complaint there is good cause to extend the time for service of the original complaint; (2) that the *Rooker–Feldman* doctrine does not bar the action because plaintiff is not seeking review of the state court decisions of Judge Maier but rather is pointing to these decisions merely to show that the violation of his rights have caused him injury; (3) that plaintiff has not stated a cause of action under the theory of joint participation for state action because plaintiff is not challenging a state statute or procedure but rather is claiming misuse or abuse of a state procedure by a state actor; and (4) plaintiff's claims of influence by attorney Crumlish upon Judge Maier and of Judge Maier's bias and prejudice toward plaintiff do *not* establish state action on behalf of the defendant under a conspiracy theory. Therefore, the motion to dismiss will be granted.

## I.

Defendant contends that because he was not served with either the original complaint or the amended complaint within 120–days after the original complaint was filed[4], ser-

vice of process was insufficient. Moreover, according to the defendant, there is no good cause for extending the time for service of the original complaint under Rule 4(m) of the Federal Rules of Civil Procedure. Therefore, the defendant argues, the Court is without personal jurisdiction to hear the case. *See* Fed.R.Civ.P. 12(b)(5).

Rule 4(m) of the Federal Rules of Civil Procedure provides as follows:

> **Time Limit for Service.** If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the [district] court upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; *provided that if plaintiff shows good cause for the failure, the Court shall extend the time for service for an appropriate period.*

Fed.R.Civ.P. (1993) (emphasis added).

In performing an analysis in the face of a Rule 4(m) challenge, the Third Circuit has instructed district courts as follows:

> [f]irst, the district court should determine whether good cause exists for an extension of time. If good cause is present, the district court must extend the time for service and the inquiry is ended. If, however, good cause does not exist, the court may in its own discretion decide whether to dismiss the case without prejudice or extend the time for service.

*Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir.1995). *See also MCI Telecomm. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1096 (3d Cir.1995), *cert. denied*, —— U.S. ——, 117 S.Ct. 64, 136 L.Ed.2d 25 (1996).

In determining whether there is good cause under Rule 4(m), district courts should

---

**3.** The Steinman litigation is essentially a two-party partnership dispute between Steinman and Craig Spencer. Steinman's complaint named as defendants Craig A. Spencer, Argus Group 1700, Inc. ("Argus"), Arden Phoenix Group 1700, L.P. ("Phoenix"), Robert Spencer, and Arden Group ("Arden"). Steinman's primary allegations were that the Craig and Robert Spencer fraudulently induced Steinman to invest in Phoenix, and that

the Spencers and Argus mismanaged and stole money from the Phoenix partnership and breached the Phoenix limited partnership agreement.

**4.** Plaintiff filed the complaint on March 7, 1996. The amended complaint was filed on February 10, 1997.

consider the (1) reasonableness of plaintiff's efforts to serve the original complaint; (2) prejudice to the defendant by lack of timely service; and (3) whether plaintiff moved for an enlargement of time to serve the original complaint. *See Teleconcepts,* 71 F.3d at 1097 (citing *U.S. v. Nuttall,* 122 F.R.D. 163, 166–67 (D.Del.1988) (citing cases)). However, the Third Circuit has cautioned district courts that good cause cannot be found based upon " 'half-hearted' efforts by counsel to effect service or process prior to the [120–day] deadline," *Petrucelli,* 46 F.3d 1298, 1307 (3d Cir.1995) (citing *Lovelace v. Acme Markets, Inc.,* 820 F.2d 81, 84 (3d Cir.)), *cert. denied,* 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987), and has further counselled that "[e]ven when delay [in timely service] results from inadvertence of counsel, it need not be excused [by finding good cause.]" *Petrucelli,* 46 F.3d at 1307 (citing *Braxton v. U.S.,* 817 F.2d 238, 241 (3d Cir.1987)).[5]

■ Here, the Court finds that each of the above three factors weighs in favor of finding good cause to extend the time for service of the original complaint. As to the first factor, e.g. whether plaintiff made a reasonable effort to effect service, counsel for plaintiff has made the following representations to the Court which have not been controverted by counsel for the defendant: (1) plaintiff attempted unsuccessfully to serve the defendant personally at his Florida residence on several occasions prior to the expiration of the 120–day deadline because the defendant deliberately evaded service of process; (2) plaintiff delivered to defendant's counsel the original complaint prior to the expiration of the 120–day deadline; (3) and plaintiff served the defendant at his Pennsylvania residence only ten days after the expiration of the 120–day deadline once he learned from defen-

dant's counsel that he was not authorized to accept service on behalf of the defendant. Under these circumstances, the Court concludes that plaintiff's failure to effectuate timely service of the original complaint upon the defendant was not the product of counsel for plaintiff's half-heartedness or mere inadvertence.

■ As to the second factor, e.g. prejudice to the defendant by the lack of timely service, the "defendant's actual knowledge of the lawsuit—which is undisputed—is crucial." *U.S. v. Nuttall,* 122 F.R.D. at 167. Since it is clear that the defendant in this case had actual notice, "[this] precludes any finding of detrimental reliance by, or prejudice to, defendant [Steinman], notwithstanding that service of process did not comport with every detail of Fed.R.Civ.P. 4." *Id.*

Finally, as to the third factor, e.g. whether or not plaintiff has moved for an enlargement of time for service under Fed.R.Civ.P. 6(b)(1), this "factor is simply a subset of the first factor, which considers the diligence and reasonableness of plaintiff's efforts." *Nuttall,* 122 F.R.D. at 167. To be sure, the record shows that plaintiff filed such a motion for enlargement of time for service under Rule 6(b)(1), and as already stated, the Court finds that plaintiff's efforts to serve the defendant within the allotted time period were reasonable.

Having found good cause under Rule 4(m), the Court will extend the time for service of the original complaint until July 16, 1996, the date when service of the original complaint was made on the defendant. Accordingly, the Court will deny the motion to dismiss on the basis of insufficient service of process.

---

5. In support of his motion to dismiss for insufficient service of process, defendant directs the Court's attention to *Ayres v. Jacobs & Crumplar, P.A.,* 99 F.3d 565 (3d Cir.1996). The Court finds that *Ayres* is inapplicable in this case.

To be sure, in *Ayres,* the Third Circuit made clear that "[a] summons which is not signed and not sealed by the Clerk of the Court does not confer personal jurisdiction over the defendant." *Ayres,* 99 F.3d at 569 (citing 2 *Moore's Federal Practice* § 4.05 (2d ed. 1996)) ("Under Rule 4(b) only the clerk may issue the summons ... [A]

summons issued by the plaintiff's attorney is a nullity." (other citations omitted)). The Third Circuit made equally clear, however, that "under such circumstances ... it becomes unnecessary for the district courts to consider such questions as whether service was properly made, or whether an extension to the 120–day service period should be granted under Rule 4(m)." *Id.* Accordingly, the Court finds that *Ayres* is not even implicated in a case such as this one where it is necessary to determine whether there is good cause under Rule 4(m).

## II.

 Defendant has also moved to dismiss the amended complaint on the ground that under the *Rooker–Feldman* doctrine the Court lacks subject matter jurisdiction to hear the case.[6] *See* Fed.R.Civ.P. 12(b)(1). The *Rooker–Feldman* doctrine teaches that, " 'lower federal courts lack subject matter jurisdiction to engage in appellate review of state court determinations or to evaluate constitutional claims that are inextricably intertwined with the state court's [decision] in a judicial proceeding.' " *Marks v. Stinson*, 19 F.3d 873, 885 n. 11 (quoting *Port Auth. PBA v. Port Auth. of N.Y. & N.J.*, 973 F.2d 169, 177 (3d Cir.1992)) (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483 n. 16, 103 S.Ct. 1303, 1315 n. 16, 75 L.Ed.2d 206 (1982)); *See also FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 840 (3d Cir.1996). Defendant argues that because in order to find for plaintiff, the Court would have to find that Judge Maier's rulings in the Steinman litigation were incorrect, the Court lacks subject matter jurisdiction to consider plaintiff's § 1983 claim.

While the Third Circuit has not addressed the application of *Rooker–Feldman* in the specific factual context present here, the Seventh Circuit recently did in *Nesses v. Shepard*, 68 F.3d 1003 (7th Cir.1995). *Shepard* involved an allegation of conspiracy among lawyers and various state judges to engineer plaintiff's defeat in certain ongoing state court litigation. The gist of plaintiff's claim in *Shepard* was that the lawyers for his opponent in the state court litigation had used their "political clout to turn the [state] judges against him." *Shepard*, 68 F.3d at 1004.

Chief Judge Posner, speaking for a divided panel, found that whether *Rooker Feldman* barred the claim depended upon whether the plaintiff was "[merely] claiming that the decision of the state court was incorrect, [and therefore] that it denied him some constitutional right," *id.* at 1005, or whether plaintiff claimed that the decision violated "some independent right of his, such as a right (if it is a right) to be judged by a tribunal that is uncontaminated by politics." *Id.* In the former, plaintiff's claim is barred by *Rooker Feldman* in that plaintiff would be seeking the review of the merits of a state court decision by a lower federal court. *See id.* In the latter, however, it would not because in that case plaintiff would be suing "to vindicate [the independent right to be judged by a tribunal uncontaminated by politics] and would be relying on the adverse decision only to show that the violation of his rights had caused the plaintiff's harm." *Id.* (citation omitted). *Cf. Ernst v. Child & Youth Services of Chester Cty.*, 108 F.3d 486, 491–92 (3d Cir.1997) (finding that a civil rights action alleging violation of substantive due process rights was not barred by *Rooker–Feldman* since a finding by the federal court that the defendants violated plaintiff's right to substantive due process "would not have involved the invalidation of any conclusion or judgment [of the merits] reached by the state court.").

Chief Judge Posner further explained the requirement of pointing to the adverse decision by the state court to show injury from the conspiracy noting that, unless plaintiff did so, he could show "no harm and without harm there is no tort." *Id.* (citation omitted). To put it another way, reliance upon the adverse decision of the state court was necessary to show not that the state judge's decision was wrong but rather that the conspiracy between the lawyer and the state judge to obtain favorable rulings for plaintiff's opponent in the state court litigation had caused

---

6. Plaintiff has not addressed the *Rooker–Feldman* issue in his submissions. This failure alone would ordinarily be grounds for granting the motion to dismiss as unopposed. *See* L.R. Civ. P. 7.1(c). Nevertheless, since the Court must satisfy itself that it has the power to hear the case, *see Ernst v. Child & Youth Services of Chester County*, 108 F.3d 486, 491 (3d Cir.1997) (explaining that "[b]ecause the federal courts are courts of limited jurisdiction, we must first satisfy ourselves that we have jurisdiction ...," and are not barred under *Rooker–Feldman* from hearing a case), it will independently examine the defendant's *Rooker–Feldman* argument.

Nor has defendant suggested that the case should be dismissed under the abstention doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Therefore, the Court will not reach this issue in deciding the motion to dismiss.

plaintiff harm. *See id.* (citing *Dennis v. Sparks,* 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980) and *Casa Marie, Inc. v. Superior Court,* 988 F.2d 252, 259 (1st Cir. 1993)).

Since plaintiff in this case does not seek reversal of Judge Maier's rulings and apparently, like the plaintiff in *Shepard,* is pointing to the rulings of the state judge only as evidence of the harm which the alleged conspiracy caused him [7], the Court finds that the *Rooker–Feldman* doctrine does not bar his § 1983 claim.[8]

### III.

Defendant seeks dismissal of the amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a cause of action. The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of a complaint. *See Sturm v. Clark,* 835 F.2d 1009, 1011 (3d Cir.1987). In deciding a motion to dismiss for failure to state a claim, the Court must "consider only those facts alleged in the complaint and accept all of the allegations as true," *ALA, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 859 (3d Cir.1994), and must view the allegations in the complaint in the light most favorable to the non-moving party. *See Rocks v. Philadelphia,* 868 F.2d 644, 645 (3d Cir.1989). Dismissal is not appropriate unless it clearly appears that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Conley v.*

*Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *See also CCAIR,* 29 F.3d at 859 (citing *D.P. Enters., Inc. v. Bucks County Community College,* 725 F.2d 943, 944 (3d Cir.1984)). A complaint may be dismissed when the facts plead and the reasonable inferences drawn therefrom are legally insufficient to support the relief sought. *See Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.,* 836 F.2d 173, 179 (3d Cir. 1988). Moreover, in deciding a motion to dismiss under Rule 12(b)(6), the district court is "not required to accept legal conclusions either alleged or inferred from the pleaded facts." *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993).

### A.

■■■ "Although a private [party] may cause a deprivation of ... a right, [the party] may be subjected to liability under § 1983 only when it does so under color of law." *Flagg Bros. Inc. v. Brooks,* 436 U.S. 149, 156, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978).[9] The Supreme Court has clarified that "[i]n cases under § 1983, 'under color' of law has consistently been treated as the same thing as the 'state action' requirement under the Fourteenth Amendment." *United States v. Price,* 383 U.S. 787, 794 n. 7, 86 S.Ct. 1152, 1157 n. 7, 16 L.Ed.2d 267 (1966) (quoted in *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 928, 102 S.Ct. 2744, 2749, 73 L.Ed.2d 482 (1982)) [hereinafter *"Lugar"*], and *Rendell–*

---

7. Plaintiff seeks, *inter alia,* preliminary and permanent injunctive relief barring the defendant and Mr. Crumlish from using their alleged influence with Judge Maier to obtain future court orders from Judge Maier. The Court will construe this request, at this early stage of the litigation, at least as asserting a constitutional right to have plaintiff's state law property claims heard in the future by a state judge free from the political influence of an adversary (if there is such a right). *See Shepard,* 68 F.3d at 1004–05 ("For it unclear, to say the least, that the U.S. Constitution can be thought to forbid the operation of politics in state judiciaries ... Most state judges are elected, some in partisan elections; the inevitable result is the injection of politics into the judicial process (citation omitted); no one (well, almost no one) (citation omitted) supposes that therefore the election of judges is unconstitutional.").

8. The Court finds that this conclusion is consistent with the Third Circuit's ruling in *Marks v.*

*Stinson,* 19 F.3d 873, 885 n. 11 (3d Cir.1994) where it was found that the district court was not deprived of subject matter jurisdiction under *Rooker–Feldman* over plaintiff's § 1983 fraud and constitutional claim of election law violations as the district court in that case could decide plaintiff's § 1983 action "without disturbing the prior state court rulings." *Id.*

9. 42 U.S.C. § 1983 provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress.

*Baker v. Kohn,* 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982). The "state action principle [under § 1983] is succinctly stated as follows: '[A]t base, constitutional standards are invoked only when it can be said that the [government] is responsible for the specific conduct of which the plaintiff complains.'" *Mark v. Borough of Hatboro,* 51 F.3d 1137, 1141–42 (3d Cir.) (quoting *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 632, 111 S.Ct. 2077, 2089, 114 L.Ed.2d 660 (1991)) [hereinafter *"Edmonson"*] (O'Connor, J., dissenting) (quoting *Blum v. Yaretsky,* 457 U.S. 991, 1004, 102 S.Ct. 2777, 2785–86, 73 L.Ed.2d 534 (1982) (alterations in original)), *cert. denied,* —— U.S. ——, 116 S.Ct. 165, 133 L.Ed.2d 107 (1995). "Put differently, deciding whether there has been state action requires an inquiry into whether 'there is a sufficiently close nexus between the State and the challenged action of [the defendant] so that the action of the latter may be fairly treated as that of the state itself.'" *Borough of Hatboro,* 51 F.3d at 1142 (quoting *Blum v. Yaretsky,* 457 U.S. at 1004, 102 S.Ct. at 2785–86 (internal citation omitted)).

Plaintiff argues that the allegations in the amended complaint satisfy the state action requirement under § 1983 for two reasons, though he places considerably greater emphasis upon the first than upon the latter. First and foremost, citing the Supreme Court's decision in *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), plaintiff claims that the allegation in the amended complaint of "joint participation" between the defendant and Judge Maier satisfies the state action requirement under § 1983. Second, almost as an afterthought, in a footnote in his reply memorandum to the motion to dismiss plaintiff asserts that "to the extent it is necessary" to plead a "conspiracy" between the defendant and Judge Maier to satisfy the state action requirement under § 1983, the allegations in the amended complaint cure such deficiency.

i.

█ Plaintiff contends that the amended complaint satisfies the "joint participation" or "joint action" test [10] for state action under § 1983. In this vein, plaintiff alleges that (1) the defendant had a "political history," "influence," and a "special relationship" with Judge Maier; and (2) that Judge Maier was biased and made a series of unconstitutional rulings in favor of defendant and against plaintiff.

Plaintiff's theory of "joint participation" is anchored upon the Supreme Court's decision in *Lugar v. Edmondson,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). *Lugar* involved a challenge to the constitutionality of a state statute authorizing prejudgment attachment of property by a private party. The defendant in *Lugar,* upon reliance on the state created procedure, had caused the issuance of a writ of attachment by the Clerk and execution on the writ by the County Sheriff resulting in the sequestration of the plaintiff's property. No allegation was made that defendant "conspired with the state officials to deny [plaintiff] the fair protection of state or federal law." *Id.* at 944, 102 S.Ct. at 2757 (Powell, J., dissenting). The Supreme Court held that the procedural scheme created by the state statute authorizing the prejudgment seizure of the plaintiff's property was the product of state action and that the joint participation of a private party with the state officials in the seizure of the property was "sufficient to characterize that [private] party as a 'state actor' for purpose of the Fourteenth Amendment". *Id.* at 941, 102 S.Ct. at 2756. The Supreme Court concluded that "'insofar as [plaintiff had] challenged

---

10. The Supreme Court has adopted at least three tests for determining whether there has been state action, "the exclusive function test, the joint action or company test, the symbolic relationship test" *See Borough of Hatboro,* at 1141–48. The lines separating these tests are more "nice" than "bright". For example, more than one test may be relevant to a particular factual situation, *see, Goussis v. Kimball,* 813 F.Supp. 352, 357 (E.D.Pa.1993) (citing *Imperiale v. Hahnemann University,* 776 F.Supp. 189 (E.D.Pa.1991)), the tests may overlap, and one or more prongs of one test may be inconsistent with the prong of another. *Id.* (citing *Community Medical Center v. Emergency Med. Services),* 712 F.2d 878, 879–81 (3d Cir.1983). "In the final analysis the test to be applied depends upon the circumstances of the case and the Supreme Court has counseled lower courts [before applying any one test] to investigate completely the facts of each case." *Id.* (citations omitted).

the constitutionality of the [state] statute "[and not alleged]" only misuses or abuse of the statute'" *id.* at 942, 102 S.Ct. at 2756, plaintiff had stated a valid cause of action under § 1983. *See, Robb v. City of Philadelphia,* 733 F.2d 286, 291 (3d Cir.1984) (explaining *Lugar* ).

■ The Third Circuit has interpreted *Lugar* to teach that "at least when the state creates a system permitting private parties to substitute their judgment for that of a state official or body, a private actor's mere invocation of state power renders that [private] party's conduct actionable [as a joint actor with the state] under § 1983." *Cruz v. Donnelly,* 727 F.2d 79, 82 (3d Cir.1984). Accordingly, the appropriate inquiry under *Lugar* is whether plaintiff's allegations raise any claim that the "[s]tate, through its agents or laws, has established a formal procedure or working relationship that drapes private actors with the power of the state." *Id.*

■ *Lugar* is inapplicable in this case. Here, unlike the plaintiff in *Lugar* who challenged the constitutionality of a state created procedure followed by the defendants in obtaining the prejudgment attachment, the plaintiff is challenging the conduct of a particular state actor. Under *Lugar,* therefore, a challenge based on "abuse or misuse" of a state procedure by a state actor, such as in this case, does not state a cause of action for conspiracy under § 1983.[11] *See e.g., Hoai v. Vo,* 935 F.2d 308 (D.C.Cir.1991) (finding that allegations of mere recourse to state court procedures absent any allegations challenging a state created procedure were insufficient to establish joint participation state action under *Lugar* and there-

fore it was appropriate for the district court to grant the Rule 12(b)(6) motion for failure to state a claim); *Crabtree v. Muchmore,* 904 F.2d 1475, 1476, 1481–82 (10th Cir.1990) (same); *Smith v. Wood,* 649 F.Supp. 901, 905 (E.D.Pa.1986) (Scirica, J.) (same).

ii.

■ Plaintiff next argues that, even assuming that the allegations in the amended complaint are insufficient to establish joint participation, plaintiff's contentions satisfy the conspiracy state action pleading requirement under § 1983. Notably, the term "conspiracy" appears nowhere in the amended complaint, and is referred to only in a footnote in plaintiff's reply memorandum to the motion to dismiss. Nevertheless, plaintiff argues, his "allegations of 'joint participation' in conjunction with the particular allegations in the amended complaint of improper influence, partiality, and bias, stemming from Mr. Crumlish's connection with, and influence over, Judge Maier, when read in the light most favorable to plaintiff, are sufficient to support the existence of a conspiracy."

■ The Supreme Court has held that an allegation that a private actor conspired with a state judge to deprive plaintiff of his constitutional rights can satisfy the state action requirement under § 1983. *Dennis v. Sparks,* 449 U.S. at 27–28, 101 S.Ct. at 186–87[12]; *See also Hammond v. Creative Financial Planning Organization,* 800 F.Supp. 1244, 1249 (E.D.Pa.1992) (discussing the conspiracy test for state action under § 1983). For purposes of § 1983, the requisite state action is present even if the alleged conspirator is a state judge who is himself immune from suit for damages under § 1983. *See*

---

11. In *Lugar,* the Supreme Court expressly limited its holding to prejudgment attachments and offered the following caveat:

> [w]e do not hold today that a private party's mere invocation of state legal procedures constitutes 'joint participation' or 'conspiracy' with state officials satisfying the § 1983 requirement of action under color of law. The holding today, as the above analysis makes clear, is limited to the particular context of prejudgment attachment.

The *Lugar* test "is inapplicable to cases in which a private party is alleged to be a state actor merely because it brought suit and invoked the independent judgment of the state judiciary."

*See Smith v. Wood,* 649 F.Supp. 901, 905 (E.D.Pa.1986) (Scirica, J.).

12. Plaintiff's § 1983 claims are bottomed on an allegation that defense counsel, not the defendant, had influence and a political history with Judge Maier. Nevertheless, for purposes of considering the motion to dismiss, the Court will construe the allegations in the amended complaint in the light most favorable to plaintiff, and therefore will assume that, in his dealings with Judge Maier, Mr. Crumlish was acting as an agent of the defendant and with the defendant's knowledge and consent.

*Sparks,* 449 U.S. at 28, 101 S.Ct. at 186–87. Therefore, even if Judge Maier is immune from suit for damages under § 1983, plaintiff nevertheless would be able to state a cause of action under § 1983 by alleging a conspiracy involving the defendant and Judge Maier to violate his constitutional rights.

■■■■ Agreement is the *sine qua non* of a conspiracy. As the Third Circuit has explained, to allege a civil conspiracy for purposes of § 1983, the plaintiff must aver "a combination of two or more persons to do a criminal act, or to do an unlawful act by unlawful means or for an unlawful purpose." *See Ammlung v. City of Chester,* 494 F.2d 811, 814 (3d Cir.1974).[13] In other words, to state a claim for conspiracy under § 1983, plaintiff must make "factual allegations of combination, agreement, or understanding among all or between any of the defendants [or coconspirators] to plot, plan, or conspire to carry out the alleged chain of events." *Hammond,* 800 F.Supp. at 1249 (citing *Ammlung,* 494 F.2d at 814); *See also Gallas v. The Supreme Court of Pennsylvania,* Civ. A. No. 96–6450, slip opin. at 36, 1997 WL 256972 (E.D.Pa. May 14, 1997) (Yohn, J.) (citing *Ammlung* ). It is not enough that the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism. To state a claim for conspiracy under § 1983, plaintiff must claim that, "[t]he private actor ... wrongfully influence[d] the state [actor's] decision ... *through a conspiracy,* or else the plaintiff must seek his remedy in a state tort claim, not a federal § 1983 suit." *Davis v. Union National Bank,* 46 F.3d 24, 26 (7th Cir.1994) (emphasis added).

The gist of plaintiff's complaint is that Mr. Crumlish and Judge Maier shared a "political history" and a "special relationship" which allowed Mr. Crumlish through ex parte communications to obtain upon request favorable rulings from Judge Maier, and that the rulings issued by Judge Maier at the behest of Mr. Crumlish were legally incorrect.[14] Nowhere among the prolix allegations of the sixty-page amended complaint, however, does plaintiff claim, much less proffer any specific facts to support a claim, that Mr. Crumlish acted through a "combination, agreement, or understanding" or "plot" or "plan" or "conspiracy" with Judge Maier. Nor does plaintiff supply any similar formulation that would support a claim that Mr. Crumlish and Judge Maier had reached a meeting of the minds to violate plaintiff's civil rights.

Allegations similar to those of the amended complaint were found by the Tenth Circuit to be insufficient to state a cause of action for conspiracy under § 1983. *Crabtree By and Through Crabtree v. Muchmore,* 904 F.2d 1475 (10th Cir.1990) involved a § 1983 complaint which named as defendants three attorneys and Oklahoma state Judge David M. Cook. Plaintiffs alleged that during the course of state court proceedings presided over by Judge Cook, the three attorneys, who were defendants in the state court litigation, had "willfully and jointly participated" and "conspired" with Judge Cook in the seizure of certain property, that they directed Judge Cook in his actions and were asked by Judge Cook what actions to take, which in all instances were subsequently taken, and that they had ex parte communications with Judge Cook. *See Crabtree,* 904 F.2d at 1480. Plaintiffs further complained that all motions made by these defendants were granted by Judge Cook and that all factual findings and legal conclusions proposed by the defendants were adopted by Judge Cook verbatim. *See id.* According to

---

13. *See also, Franklin Music v. American Broadcasting Companies,* 616 F.2d 528, 535 (3d Cir. 1979) (explaining in another context that a civil conspiracy involves "a combination between two or more persons to do an unlawful act, or to do lawful act by unlawful means, or to accomplish an unlawful purpose.").

14. Plaintiff's allegations of conduct between the defendant and Judge Maier fall roughly into the following six categories: (1) ex parte communications (e.g., *see* doc. no. 17, paragraph nos. 55, 73, and 75); (2) adverse rulings (e.g., *see* doc. no. 17, paragraph no. 42); (3) judicial error (e.g., *see* doc. no. 17, paragraph nos. 90 and 112); (4) bias and/or prejudice (e.g., *see* doc. no. 17, paragraph nos. 61, 90, 115 and 118); (5) political influence and/or political history (e.g., *see* doc. no. 17, paragraph nos. 29, 38, 43, 47, 55, 57, 67, 71 and 91); and (6) direction of activities (e.g., *see* doc. no. 17, paragraph nos. 38, 55, 62, 66, 67, 108–110, and 120).

plaintiffs, "these actions were accomplished by these defendants by virtue of their joint activity with and as co-conspirators with Judge Cook." *Id.* The Crabtree defendants challenged the sufficiency of the plaintiffs' allegations arguing that the plaintiffs had failed to state a claim under § 1983 because they had failed to allege adequately a conspiracy among the defendants. *See id.*

The district court found, in a decision adopted by the Tenth Circuit, that "[a] conspiracy [under § 1983] cannot be found from allegations of judicial error, ex parte communications (the manner of occurrence and the substance of which were not alleged), or adverse rulings absent specific facts demonstrating an agreement to commit the alleged improper actions." *Id.* at 1481. *Accord, Casa Marie, Inc.,* 988 F.2d 252, 259 (1st Cir.1993) (finding that conclusory allegation in plaintiff's complaint of a conspiracy between litigant and state judge without any allegations of specific facts to support allegation of conspiracy were insufficient to establish state action on the part of private litigant under the conspiracy theory of state action and therefore concluding that plaintiff had failed to state a cause of action under § 1983); *Schucker v. Rockwood,* 846 F.2d 1202, 1205 (9th Cir.1988) (same); *Gallas v. The Supreme Court of Pennsylvania et al.,* Civ. A. No. 96–6450, slip opin. at 35–38, 1997 WL 256972 (E.D.Pa. May 14, 1997) (Yohn, J.) (same).

 Here, given that plaintiff's claim of a conspiracy between Mr. Crumlish and Judge Maier is not supported by specific facts pointing to an agreement between Mr.

Crumlish and Judge Maier to violate plaintiff's civil rights, the Court concludes that the allegations set forth in the amended complaint are insufficient to show state action on the part of the defendant under a conspiracy theory. *See e.g., Crabtree,* 904 F.2d at 1476; *Casa Marie,* 988 F.2d at 259; *Rockwood,* 846 F.2d at 1205; and *Gallas,* Civ. A. No. 96–6450, slip. opin. at 37–38. Therefore, the Court finds that plaintiff has failed to state a cause of action under § 1983 based upon a conspiracy theory.[15]

### IV.

In cases involving federal claims and appended state claims "if the federal claims are dismissed before trial . . . the state claims should be dismissed as well." *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *See also* 28 U.S.C. § 1367(c)(3). In light of the fact that plaintiff's § 1983 claims have been dismissed under Rule 12(b)(6), and as plaintiff has brought no other claims for federal relief, the Court will exercise its discretion to dismiss without prejudice plaintiff's pendent state law claims.

### V.

For the above reasons, the Court will grant the motion to dismiss under Fed. R.Civ.P. 12(b)(6) since plaintiff has failed to state a cause of action under § 1983.

---

15. If he so desires, plaintiff may file a second amended complaint in conformity with this opinion of the Court. *See Darr v. Wolfe,* 767 F.2d 79, 81 (3d Cir.1985).

Following the Supreme Court's decision in *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), a federal civil rights claim, with the possible exception of actions brought against individual government officials, must meet only the general notice pleading requirement of Rule 8(a)(2) of the Federal Rules of Civil Procedure and is no longer subject to a heightened pleading requirement. Nevertheless, in order to satisfy the notice pleading requirement for a civil rights action based upon a claim of conspiracy, the complaint "'must contain sufficient information for the court to determine whether or not a valid claim for relief has been stated and to enable the opposing side to prepare an adequate responsive pleading.'" *Loftus v. SEPTA,* 843 F.Supp. at 983–985 (quoting *Rose v. Bartle,* 871 F.2d 331, 366 n. 60 (3d Cir.1989)) (quoting 5 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure: Civil* § 1223, at 181). If the plaintiff chooses to file a second amended complaint, he should keep in mind that "[w]hile the pleading standard under Rule 8 is a liberal one, mere incantation of the words 'conspiracy' or 'acted in concert' [would] not talismanically satisfy the Rule's requirements." *Loftus v. SEPTA,* 843 F.Supp. 981, 987 (E.D.Pa.1994).